[L. A. No. 12327. In Bank.—September 30, 1930.]

CORWIN A. TOWNSEND Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Wilbert C. Hamilton for Petitioner.

Philbrick McCoy and David S. Shattuck for Respondent.

PRESTON, J.—By this proceeding petitioner is accused of an infraction of subdivision 4 of section 287 of the Code of Civil Procedure, in that, being an attorney at law, he loaned his name to be used as attorney and counselor by other persons who were not licensed attorneys.

The charge grows out of petitioner's relation to two individuals, Gussaroff and Levy, brothers-in-law, licensed as adjusters under the state law and doing business under the name of Standard Adjustment Organization. This concern during the year 1928 and at all times herein involved, was engaged in the business commonly known as "ambulance chasing"; it maintained an office and staff of assistants in the Metropolitan Building, Los Angeles. It actively solicited contracts of employment from persons who had received personal injuries as a result of automobile accidents and from other causes, where the party causing the injury was indemnified against loss by insurance.

These contracts authorized the adjusters to take all necessary steps to enforce collection of the claims, such as employing attorneys and instituting suits for that purpose. Their compensation was a percentage of the amount recovered, whether by suit or adjustment. To this end they usually caused suit to be instituted in the name of the injured party against the party causing the injury and during the pendency of the action diligent efforts would be made to adjust and compromise the claim with the indemnitor insurance company. The assiduity in behalf of settlement would doubtless be stimulated by the fact that the adjusters often advanced small sums to injured parties to meet their immediate necessities. Being engaged in work which required as a rule the commencement of litigation, the adjusters and their staff became proficient in the practice of the law in this class of cases. Legal blanks of all kinds were provided and a stock set of forms of complaints was always on hand. The firm here involved had a business connection with some four or more attorneys.

Petitioner became associated with the concern in February, 1928, and remained with them until September, 1928. He drew a salary of one hundred dollars a month with an added fee of fifteen dollars for the presentation of a demurrer or motion and twenty-five dollars for an actual trial. He had a regular office in the Douglas Building, Los Angeles. Nevertheless, the legal blanks and covers issuing from the office of said adjusters bore thereon petitioner's name with the address of the concern as his address. The necessary result of this act was that all persons desiring to communicate with petitioner would seek him at the office of the adjusters and invariably some member of the organization would attend to the matter without the aid and usually without the knowledge of petitioner. This plan was designed especially to promote the carrying on of the causes in court by the adjusters instead of by petitioner.

The complaints were prepared by the adjusters and usually, but not always, signed by petitioner. As many as thirty or forty such pleadings would be filed in one month. Petitioner sometimes, but not always, saw the clients but in reality he took little, if any, interest in the settlement of the claims or in seeing that they were in the best interests of the injured parties. For his clients were in reality the adjusters and not the injured parties and to the adjusters only did he yield allegiance. When settlements were reached and dismissals required, they were drawn in the office of the adjusters and sometimes signed by petitioner in person but more often by the adjusters or their employees. In short, the adjusters, by the use of the attorney's name, not only secured the claims for collection but thereafter used said name at will in the out and out practice of law by the prosecution of claims to settlement or judgment. Petitioner knew of the business system of the adjusters and knowingly permitted the use of his name in the manner depicted.

We find no legal justification for his conduct. ■ The right to practice law not only presupposes in its possessor integrity, legal standing and attainment, but also the exercise of a special privilege, highly personal and partaking of the nature of a public trust. It is manifest that the powers and privileges derived from it may not with propriety be delegated to or exercised by a nonlicensed person. In *Alpers*

v. *Hunt*, 86 Cal. 78, 88 [21 Am. St. Rep. 17, 9 L. R. A. 483, 24 Pac. 846, 849], it is said: "If such a practice were allowed, an attorney might have a number of undisclosed associates through his agency exercising the functions of an attorney and counselor, and reaping the rewards flowing therefrom, without resting under any of the responsibilities incident to such a position, and possessing none of the qualifications which the law demands and requires."

The conduct of petitioner is tantamount to an absolute abdication of his powers and privileges as an attorney, together with an attempt to confer them upon persons not entitled to practice law or appear in the courts for litigants. The recommendation of the Board of Governors is that petitioner be suspended for the period of one year and we are disposed to adopt that recommendation.

We have been asked to hold that petitioner has also violated rules 2 and 3 of the Rules of Professional Conduct, 204 Cal. xci, but inasmuch as petitioner was not required to meet a charge under these rules, we must hold that such contention is not appropriate in this proceeding.

We are also asked to hold that under section 633e of the Political Code the said adjusters were not authorized to conduct the adjustment of claims between an injured party and the indemnifier of the party causing the injury. In other words, that the business of an adjuster must be confined to negotiations on behalf of the insurer and the assured, one or both. This question is likewise not directly involved in this case; it is not germane to a charge under the above cited code section. It is enough that no letter of authority issued by the insurance commissioner of the state would of itself entitle the holder to engage in the practice of the law.

It is therefore ordered that the action and recommendation of the Board of Governors in this matter be and it is hereby approved and that the petitioner, Corwin A. Townsend, be and he is hereby suspended from the practice of the law in this state for the period of one year from and after the date of filing of this order.

Curtis, J., Seawell, J., Shenk, J., Richards, J., and Waste, C. J., concurred.

Rehearing denied.