[S. F. No. 16969. In Bank. May 8, 1944.]

LESLIE F. McGREGOR, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Leslie F. McGregor, in pro. per., for Petitioner.

Sam J. Anderson and Jerold E. Weil for Respondent.

THE COURT.—This is a proceeding to review the findings
and the recommendation of the Board of Governors of The
State Bar of California that the petitioner be disbarred from
the practice of the law in all the courts of this state.

By an amended notice to show cause the petitioner was
charged with the violation of his oath and duties as an attor-
ney and with the commission of acts involving moral turpi-
tude and dishonesty (Bus. & Prof. Code, §§ 6067, 6068, 6103,
6106) ; and, in particular, with the violation of section 6105
of said code (lending his name to be used as an attorney by
another person who is not an attorney) and Rule 9 of the

Rules of Professional Conduct (commingling money belonging to clients with his own funds and failing to report promptly the receipt of money belonging to them, 213 Cal. cxv.) The petitioner made written answer to these charges but did not appear either in person or by counsel at any of the three hearings held in this disciplinary matter before the appointed local administrative committee, and at which the complaining witnesses and the petitioner's implicated employee testified. From the evidence so before it the committee made findings of fact and conclusions of law adverse to the petitioner and recommended that he be disbarred. Thereafter the petitioner was notified of his privilege to appear before the Board of Governors for oral argument of his case, but he did not attend the meeting scheduled for the consideration of his matter or otherwise communicate with the board. Thereupon, after full discussion of the record, the board adopted, with slight modification, the findings of fact made by the local administrative committee and, by a vote of twelve to two, approved the recommendation of the petitioner's disbarment. In so fixing the degree of discipline, the board took into consideration that another disciplinary matter against the petitioner, likewise concerning contested issues of moral turpitude and dishonesty in connection with charges of his infraction of Rule 9 of the Rules of Professional Conduct, was pending before The State Bar and upon which hearings had been held by a local administrative committee at the time that the alleged misconduct involved in the present proceeding took place. In said prior matter the board recommended a suspension of ninety days, the petitioner did not seek a review in this court, and accordingly he was suspended from the practice of the law for the mentioned period by order of this court dated March 1, 1943 (*In re Suspension of McGregor,* Bar Misc. 1749), some six months before the board's recommendation of disbarment in the present proceeding.

Upon this application for review the petitioner advances two arguments: (1) the insufficiency of the evidence to sustain the determination of the board; and (2) the impropriety of its reference to his past record of suspension in fixing the measure of discipline herein.

In the findings, as modified, the facts involved in the present proceeding are recited substantially as follows: For some time prior to February, 1942, and for several months

thereafter, the petitioner maintained his law office and a collection agency at the same location in San Francisco. To assist him in his business, the petitioner employed one Peter Lorenzo, who was not a member of the bar but who was given wide authority in the performance of his duties and allowed to use the petitioner's name as an attorney at law in carrying on correspondence and acknowledging receipts of money in connection with the conduct of the collection agency. The latter activity appeared to be so interwoven with the petitioner's legal business that it was difficult to distinguish between the two in the allocation of services rendered; however, Lorenzo was paid by the petitioner from his own funds, and not by the collection agency as a separate entity.

Sometime in February, 1942, one Harry Pickering called at the office of the petitioner for the purpose of employing him to collect the balance of $55 due on a promissory note made in favor of Pickering and his wife. Pickering was seeking the services of an attorney and not of a collection agency. He was interviewed by a man in the office whom he believed to be the petitioner, but who answered the description of Lorenzo; and it was then agreed between the two that the fee would be contingent upon the successful completion of the undertaking and in such event, would be one-half of the collection. Thereafter two progress reports written on the petitioner's letterhead—one dated February 25, 1942, and the other July 15, 1942—each bearing the petitioner's signature and setting forth the efforts being made to locate the debtor, were sent to Pickering. Lorenzo admitted having signed the petitioner's name to these reports and stated that on many other occasions he had followed the same practice with respect to communications written on the petitioner's legal stationery. Subsequent to the date last above mentioned the debtor under the note called at the petitioner's office on various occasions, paid the $55 balance in the course of several installments (August-October 10, 1942), and was given corresponding receipts therefor, each bearing the rubber stamp signature of the petitioner and none revealing any connection with the collection agency. Lorenzo stated that he placed the rubber stamp signature on the receipts in accordance with his customary procedure in handling such matters for the petitioner. Neither the petitioner nor Lorenzo made any accounting to the Pickerings with respect to the collection of the $55, or any

part thereof; no part of said sum was ever paid to them; but admittedly without the consent of the Pickerings, the whole amount was commingled with the petitioner's funds and appropriated to his use and benefit. The Pickerings did not learn of the collection of the $55, or any part of it, until October 10, 1942, the date of the final payment, when the debtor advised them of the fulfillment of his obligation.

Turning to the record in this matter and, in the review thereof, according to the petitioner every favorable inference and intendment, the conclusion is inescapable that he has not met the burden of showing that the findings of the board, as above summarized, are erroneous or unsupported by the evidence. (Bus. & Prof. Code, § 6083.) The adverse determination of the factual issue as to whether the petitioner permitted his employee, Lorenzo, a layman, to use his name as an attorney at law in the operation of the collection agency is in direct line with the positive testimony adduced at the hearings in this matter. Thus, after observing that the petitioner's collection business and legal affairs were so intermingled that it was difficult to distinguish them as regards the rendition of services, Lorenzo stated that in the regular performance of his duties in the management of the petitioner's office he was authorized to interview clients and fix fees, write letters on the petitioner's legal stationery, sign the latter's name to the communications, and acknowledge moneys collected on claims by appropriate receipts bearing the petitioner's rubber stamp signature. In particular as here involved, Lorenzo identified the above-mentioned two progress reports addressed to the Pickerings in February and July, 1942, and the receipts given to the debtor under the Pickering note as typical of his authorized use of the petitioner's name in business transactions concerning the affairs of clients with the office. Pickering testified that when he entered the petitioner's office seeking the services of an attorney, he was interviewed by a man answering the description of Lorenzo but who, from the tenor of their discussion fixing the fee arrangements in connection with the collection matter, Pickering assumed was the petitioner. Lorenzo admitted Pickering's description and recalled, though vaguely in view of the lapse of time and the many similar matters he handled in the interim, the circumstances of the particular interview.

While the petitioner claims that he instructed Lorenzo to

"close out" the collection business in the early part of 1942, a procedure which, according to the petitioner, would require several months to complete, Lorenzo emphatically denied that he had been so directed and maintained that he, as a trusted employee and during the petitioner's absence, only continued to manage the latter's office in the same manner as he had for some years previously. It appears that in the year 1942 the petitioner, by reason of his employment in a defense plant, was absent from his office a considerable portion of each day, frequently not going there until late in the afternoon or evening; yet, according to Lorenzo, the petitioner in his daily visits was maintaining an active contact with his business and was, in fact, "conducting" it when Lorenzo left the petitioner's employ in October of that year to do government work. Thus, Lorenzo testified that all moneys collected by him in the petitioner's absence were placed in a cashbox and called to the petitioner's attention on his return; that if he, Lorenzo, left the office when the petitioner was not there, he always would leave a note informing the petitioner of what had transpired in his absence, including a reference to any collections which might be found in the cashbox; and that the petitioner customarily took care of all bank deposits himself.

That there is no evidence that the petitioner ever heard of or dealt with the Pickering matter is of no consequence here. What is important under the circumstances is the fact that it can readily be inferred from the record that Lorenzo represented himself as the petitioner in all his dealings with the Pickerings and that he was authorized to do so as part of the regular performance of his office duties; and the petitioner admits, in his application for review by this court, that the "ultimate responsibility of the (Pickering) case would be" his.

With respect to the issue of the petitioner's improper retention of funds belonging to the Pickerings as the result of the installment payments by the debtor under their note, the evidence is indisputably unfavorable to the petitioner. The two progress reports of February and July, 1942, as above mentioned, simply recited efforts of the petitioner's office to locate the debtor; the subsequent collection of the moneys due on the note apparently were never communicated by Lorenzo or the petitioner to the Pickerings, who first learned of the payments from the debtor on the day the last one was made,

October 10, 1942. The receipts for the respective sums credited against the note—exhibits in the record—conclusively establish, of course, that the full $55 balance was paid into the petitioner's office. Although in his answer filed in this disciplinary proceedings, the petitioner averred that he "has ascertained that the money is due the said Pickerings and has caused to be issued a remittance to them," no evidence of such reimbursement was offered by him or in his behalf at the hearings before the local administrative committee or the Board of Governors. ▮ But even were the petitioner's allegation conceded to be the fact, the restitution of moneys wrongfully retained, especially where made as a matter of expediency and under pressure, does not entitle an attorney to any indulgence. (*Maggart* v. *State Bar,* 7 Cal.2d 495 [61 P.2d 451] ; *Narlian* v. *State Bar,* 21 Cal.2d 876 [136 P.2d 553].)

▮ There is no legal justification for the petitioner's misconduct as thus charged and found upon compelling evidence. His method of doing business in the manner depicted, indicating a lack of those qualities essential to the maintenance of the dignity and integrity of the profession and the protection of the public, comes within the definition of "moral turpitude" as the term is used in bar matters. As was said in *Townsend* v. *State Bar,* 210 Cal. 362, 364 [291 P. 837] : "The right to practice law not only presupposes in its possessor integrity, legal standing and attainment, but also the exercise of a special privilege, highly personal and partaking of the nature of a public trust. It is manifest that the powers and privileges derived from it may not with propriety be delegated to or exercised by a nonlicensed person." Moreover, as noted by the Board of Governors in its recommendation to this court, the misconduct subject of the present proceeding covered a period in part coincident with, and also extending beyond, the hearing of another disciplinary charge against the petitioner by a local administrative committee of The State Bar. Such prior matter, involving considerations of "moral turpitude" in connection with an objectionable accounting practice, terminated adversely for the petitioner; he did not challenge the consequent disciplinary recommendation of the Board of Governors; and finality was reached therein upon the order of this court in March, 1943, suspending him from practice for ninety days. (*In re Suspension of*

*McGregor,* Bar Misc. 1749, *supra.*) As so concluded some six months prior to the board's determination of the present proceeding, the prior suspension was an appopriate consideration herein. (*Mills* v. *State Bar,* 6 Cal.2d 565, 567 [58 P.2d 1273] ; *Dudney* v. *State Bar,* 8 Cal.2d 555, 562-563 [66 P.2d 1199] ; *Petersen* v. *State Bar,* 21 Cal.2d 866, 871 [136 P.2d 561].) Its particular significance here rests upon the fact that the petitioner, while undergoing investigation for the act of dishonesty there involved and subsequently established, committed still further acts of a similar nature. It is apparent therefrom that the disciplinary considerations inherent in the prior charge did not improve the petitioner's appreciation of the ethical standards of the profession or impress him with his responsibilities in handling the affairs of clients. The State Bar Act (Bus. & Prof. Code, chap. 4) is designed to provide a procedure whereby those attorneys at law who prove recreant to their trust may be removed from the practice. As was said in *Dudney* v. *State Bar, supra,* at page 563: "The purpose of disbarment proceedings is not to punish the individual but to determine whether the attorney should continue in that capacity." These considerations in conjunction with the facts in the present proceeding as disclosed by the record herein fully justified the action and determination of the board.

It is ordered that the petitioner be disbarred from the practice of law in all of the courts of this state and that his name be stricken from the roll of attorneys, this order to be effective thirty days from the filing of this decision.