[Civ. No. 433. Fifth Dist. Feb. 25, 1965.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. M. CARROLL MALONE et al., Defendants and Appellants.

M. Carroll Malone, in pro. per., and Willedd Andrews for Defendants and Appellants.

Harry S. Fenton, R. B. Pegram, Joseph A. Montoya, Philip F. Lanzafame and Robert W. Vidor for Plaintiff and Respondent.

CONLEY, P. J.— A leading question here is: Can an agent, by virtue of a special power of attorney, participate in litigation on behalf of his principal and stipulate to a judgment in the place and stead of an attorney at law? The answer, which should be obvious at least to every judge and attorney familiar with the State Bar Act (Bus. & Prof. Code, div. 3, ch. 4), is a positive ''No.''

Desiring to construct a freeway through a portion of Riverside County, the Department of Public Works brought a condemnation suit against the owners of the land along the proposed right of way, including the brothers Malone, who are appellants herein. M. Carroll Malone was an engineer and Paul T. Malone was acting as a sergeant in the air force. Personal service of the complaint and summons was made upon Carroll Malone and, at an air force installation in Merced County, upon Paul Malone. As Paul Malone expected to be absent on duty during the pendency of the suit, he executed a special power of attorney in favor of his brother, Carroll; the exact terms of the document are not available as it was lost; but it is conceded by all parties that such power of attorney was in fact executed.

Although never an attorney at law, Carroll Malone purported to carry on the litigation for his brother as well as himself. He filed an answer which at the usual place for subscription contained the typewritten names of both brothers and his own personal signature. Although the law presupposes attendance upon the pretrial conference of an individual defendant who is not represented by an attorney, Carroll Malone purported to represent his brother there as well as himself, and, when the case was thereafter called for trial, he alone appeared for the two brothers and helped toward the selection of a jury; he then attended a conference in the chambers of the trial judge, and at that time agreed to a settlement of the case on behalf of his brother and himself.

Following is the reporter's transcript of what took place:
''THE COURT: Let the record show these proceedings are

being had in chambers outside the presence of the jury. The Court has conferred with Mr. Malone, on behalf of the two defendants in this matter, and with Mr. Lanzafame, counsel for the plaintiff, and a definite offer to compromise and amicably settle the matter has been made and has been accepted. Will you state the terms of the offer, Mr. Lanzafame, please?

"Mr. Lanzafame: Yes, Your Honor: The plaintiff offers the amount of $12,700 as the total compensation for the taking of Parcel 1 as described in the Complaint on file herein and for all damages of any kind and whatsoever nature suffered by the defendants who have an interest in Parcel 1 by reason of the taking of Parcel 1 and the construction of the improvement in the manner proposed by the plaintiff.

"The Court: Is that offer agreeable to you?

"Mr. Malone: Yes.

"The Court: Both on your own behalf and on behalf of Paul Malone?

"Mr. Malone: My brother is named as co-defendant. I have a special Power of Attorney to represent him.

"The Court: It is necessary for you to answer the question. You are accepting both on your own behalf and on behalf of Paul Malone?

"Mr. Malone: Yes.

"The Court: The compromise settlement is hereby approved by the Court and judgment in accordance therewith is hereby ordered entered.

(Discussion off record.)

"The Court: For the record, gentlemen, it has occurred to the Court here that since Mr. M. Carroll Malone is not an attorney and is appearing In Propria Persona that proof of joinder in the settlement by the co-defendant, Paul T. Malone, should be placed in the record. I suggest to you gentlemen that the approval of the settlement and the entry of the judgment in accordance therewith be made conditional upon the presentation to the Court in the form of an appropriate document or documents of the concurrence in settlement, and the acceptance of the offer by Mr. Paul T. Malone as well as Mr. M. Carroll Malone. Is that agreeable?

"Mr. Lanzafame: That is agreeable on behalf of the plaintiff.

"The Court: And is that agreeable to you, Mr. Malone?

"Mr. Malone: Yes, Your Honor.

"THE COURT: As soon as such proof is presented to the Court, judgement [sic] in accordance therewith is ordered entered."

Court and counsel and Carroll Malone then returned to the courtroom and the judge told the jury that he thought that ". . . the most satisfactory way to resolve litigation is by amicable stipulation rather than the controversial methods we employ in the courtroom, . . ." and that the parties had reached a settlement, whereupon he dismissed the jury.

In the interval between the proceedings just mentioned and the later motion of plaintiff to enter a judgment in the case, Carroll advised Paul of what had occurred and Paul, from his military base in Texas, told his brother in unmistakable terms that he did not approve the purported settlement and would not execute a new power of attorney in place of the one which had been lost; he also specifically withdrew whatever authorization to proceed with the case he had previously given his brother.

On June 4, 1963, respondent moved the court for the entry of a judgment based on the purported compromise against the two Malone brothers. Then, for the first time, an attorney at law appeared for Paul T. Malone and, with Carroll Malone, opposed the entry of such a judgment. However, the trial judge acceded to the idea that a judgment should be filed, and, thereafter, on the 6th day of August, 1963, he signed findings of fact and conclusions of law and a judgment, although there never had been a trial of the case; a jury was never selected; no evidence was introduced. The findings of fact and conclusions of law recite that "M. Carroll Malone appeared [at the time of trial] in propria persona; Paul T. Malone did not appear in person and was not represented by counsel."

The document continues: "The parties proceeded in the selection of a jury, but prior to the impanelment of a jury to try the cause the parties entered into stipulations for the disposition of the matter; . . . ."

The court thereupon made 15 paragraphs of findings followed by conclusions of law, although there was no evidence and only a conditional stipulation in open court by the attorney for the Department of Public Works and Carroll Malone that the brothers would take $12,700 for their interest in the land if Paul Malone approved the stipulation. In the findings, the court refers to ". . . the answers of defendants M. Carroll Malone and Paul T. Malone, . . ." and denies that the allega-

tions of value contained therein are true, being in excess of "what is herein found to be the fact." Paragraph X states: "The Court finds that defendants M. Carroll Malone and Paul T. Malone have generally appeared in the above-entitled action in propria persona by answer to plaintiff's complaint, and by participation in the conduct of the proceedings subsequent to the filing of their answer."

Is not this equivalent to a conclusion that M. Carroll Malone properly "participated" in the place and stead of an attorney at law on behalf of Paul T. Malone?

Paragraph XII continues: "The Court finds that at all times from the commencement of the action, to wit, March 26, 1962, to the calling of the cause for trial on March 4, 1963, defendant M. Carroll Malone has appeared in propria persona and that defendant Paul T. Malone has not personally appeared nor been represented by counsel, but that defendant Paul T. Malone has been represented by defendant M. Carroll Malone in the conduct of these proceedings by authority granted to M. Carroll Malone by said defendant Paul T. Malone."

The court also recites that a stipulation was entered into between M. Carroll Malone "on behalf of defendants M. Carroll Malone and Paul T. Malone, . . ." and one of the attorneys for plaintiff and that the total compensation to be awarded for the taking of the property was the sum of $12,700.

Paragraph XIV is as follows: "The Court finds that at all times herein mentioned from the date of the commencement of this action, to wit, March 26, 1962, defendant M. Carroll Malone was authorized to act on behalf of Paul T. Malone in the negotiations and settlement of plaintiff's cause of action for the acquisition of Parcel 1 under the power of eminent domain; that said authority was conferred by defendant Paul T. Malone upon M. Carroll Malone by written power of attorney which power of attorney was in full force and effect at the time the stipulation was entered into as hereinabove found in Finding number XIII."

The conclusions of law hold that the plaintiff is entitled to a judgment condemning the property of both the Malone brothers for the sum of $12,700, together with interest, and their costs of suit. The judgment in condemnation follows the contents of the "conclusions of law." The respective rights of the brothers in the total sum of $12,700 are not specified, the court saying that the payment into the court shall be ". . . for

the benefit of defendants M. Carroll Malone and Paul T. Malone, as their interests may appear.''

Section 6125 of the Business and Professions Code reads as follows: ''No person shall practice law in this state unless he is an active member of the State Bar.''

Section 6126 of the Business and Professions Code states: ''Any person advertising himself as practicing or entitled to practice law or otherwise practicing law . . . who is not an active member of the State Bar, is guilty of a misdemeanor.''

And section 6127 of the same code provides: ''The following acts or omissions in respect to the practice of law are contempts of the authority of the courts:

'' (a) Assuming to be an officer or attorney of a court and acting as such, without authority.

'' (b) Advertising or holding oneself out as practicing or as entitled to practice law or otherwise practicing law in any court, without being an active member of the State Bar.

''Proceedings to adjudge a person in contempt of court under this section are to be taken in accordance with the provisions of Title V of Part III of the Code of Civil Procedure.''

An attorney in fact is thus defined in 2 Corpus Juris Secundum, Agency, section 4, page 1037: ''An attorney in fact is one who is given authority by his principal to do a particular act not of a legal character. The term 'attorney in fact' is, in loose language, used to include agents of all kinds, but in its strict legal sense it means an agent having a special authority created by deed.''

Volume 3 American Jurisprudence Second, Agency, section 20, page 430 says: ''As a general rule, a person may properly appoint an agent to do the same acts and to achieve the same legal consequences by the performance of an act as if he had acted personally, unless public policy or the agreement with the principal requires personal performance; unless the agreement to do an act, or the doing of the act itself, is criminal, tortious, or otherwise opposed to public policy, in which case the appointment is illegal; . . .''

In 3 American Jurisprudence Second, Agency, section 23, page 433, the basic conceptions of attorney at law and attorney in fact are thus contrasted: ''. . . the person holding a power of attorney is known and designated as an 'attorney in fact,' thus distinguishing such person from an attorney at law.''

A power of attorney does not permit an agent to act as an attorney at law. If the rule were otherwise, the State

Bar Act could be relegated to contempt by any layman who secured from his principal an ordinary power of attorney, for the purpose of representing him in pending litigation.

An attorney at law is different from an attorney in fact by definition and by general customary treatment; Carroll Malone had no right whatsoever to act as attorney for his absent brother. This fact alone requires us to say that we cannot uphold the judgment as to Paul T. Malone. The short sentence appearing in *Campbell v. Jewish Committee for Personal Service*, 125 Cal.App.2d 771, at page 772 [271 P.2d 185] is appropriate: "Not being a lawyer, Campbell cannot appear as attorney for his brother."

What Carroll purported to do for Paul in place of an attorney was a nullity, and that fact should have been known to the court and to opposing counsel.

The State Bar Act, of course, does not prevent an individual from trying his own case or from agreeing to a judgment in a specific sum for or against himself (*Wilde v. Superior Court*, 53 Cal.App.2d 168, 173 [127 P.2d 560]; *Gray v. Justice's Court*, 18 Cal.App.2d 420, 423 [63 P.2d 1160]). If Carroll Malone had unconditionally agreed with counsel for the Department of Public Works to accept as a compromise for himself a specific sum of money for his own interest in the land, such a stipulation would have been binding on him personally.

But the judgment in its present form does not specifically state the exact amount of money that must be paid to Carroll Malone. It requires the payment of $12,700 to both brothers "as their interests may appear." It is, therefore, clear that the judgment is not in a form to evidence correctly a final agreement by Carroll Malone for a separate settlement of the case as to his personal ownership in the land.

In the purported stipulation and the court's qualified acceptance of it as shown by the record, the order for judgment was made conditional upon an express approval of the settlement by Paul T. Malone. The judgment was to be entered only "upon the presentation to the Court in the form of an appropriate document or documents of the concurrence in settlement, and the acceptance of the offer by Mr. Paul T. Malone as well as Mr. M. Carroll Malone." Both Mr. Lanzafame, the attorney for the state, and M. Carroll Malone specifically accepted this condition as shown by the portion of the record above quoted. The condition was never fulfilled, and the court, therefore, was acting contrary to its own conditional

acceptance of the stipulation when it later ordered the entry of a judgment. The judgment, therefore, must be reversed as to M. Carroll Malone, as well as to his brother, Paul T. Malone.

The judgment and the final order of condemnation are reversed.

Brown (R. M.), J., and Stone, J., concurred.