[No. A024417. First Dist., Div. Three. Feb. 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MERICAN LEWIS MEDLER, Defendant and Appellant.

## COUNSEL

David Shagam, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gloria F. DeHart and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ANDERSON, J.*—This is an appeal from a judgment rendered after a jury trial at which defendant, Merican Lewis Medler (appellant herein), was found guilty of two counts of Penal Code[1] section 245, subdivision (a) (aggravated assault), and sections 236/237 (false imprisonment). The jury also found that appellant personally used a firearm in the commission of the above offenses in violation of section 12022.5.

Appellant was sentenced to a total of two years in state prison. The court sentenced him to the mitigated term of two years for the violations of section 245, subdivision (a), to be served concurrently. Appellant was sentenced to the midterm of two years for the violation of sections 236/237, to be served concurrently. The court struck the use of firearm enhancement on all three counts for the purpose of sentencing.

Angela Ray had been the girlfriend of appellant on and off for two or three years while she was in high school. She broke up with him because she was scared of him. On August 12, 1982, Angela was at home with her four-year-old brother and Teresia Foxx. At approximately 11:45 p.m., Angela answered a knock at the door recognizing the voice of Terry Atkins. As Angela opened the door appellant, who had sneaked up behind Atkins, ran into the house.

---

*Assigned by the Chairperson of the Judicial Council.
[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

Appellant immediately grabbed Angela, picked her up, and threw her against a large television set where she hit her head and fell to the floor. He ordered her to get up and when she hesitated, he kicked her. While pointing a gun at Teresia, appellant told her that if she called the police he would shoot both Teresia and Angela.

Thereafter, appellant again grabbed Angela and forced her outside onto the patio, where she tripped and fell on a hose. Appellant threatened her life, forcing her to feel the gun in his pocket with her hand. Meanwhile, Terry Atkins called the police. Subsequently, appellant's friends came in the backyard and warned him that the police were coming. Appellant poked the gun in Angela's side, forced her inside and ran out the front door.

When the police arrived, appellant was lying down in the back seat of a car parked in front of Angela's next door neighbor's house. The officers found a loaded .22 caliber revolver underneath the front seat.

I

■ Appellant contends that he was denied the effective assistance of counsel because his attorney had been suspended from practice for nonpayment of State Bar dues. It is true that appellant's counsel, Demea Washington, was suspended from the practice of law at the time of trial in February of 1983. However, appellant cites no authority, and we are aware of none, which requires automatic reversal for a conviction solely because counsel was on suspension for failure to pay his or her bar dues.

Appellant relies on *City of Downey* v. *Johnson* (1968) 263 Cal.App.2d 775 [69 Cal.Rptr. 830] and *People* ex rel. *Dept. of Public Works* v. *Malone* (1965) 232 Cal.App.2d 531 [42 Cal.Rptr. 888], for support. However, those cases are inapplicable to the case at bar. ■ They hold that a judgment is void wherein a *nonattorney,* that is, a layman who is not a member of the California State Bar or any other bar, acts as an attorney. The United States Supreme Court has held that the Sixth Amendment right to the effective assistance of counsel is violated "when the accused is 'represented' by a layman masquerading as a qualified attorney; . . ." (*Harrison* v. *United States* (D.C.Cir. 1967) 387 F.2d 203, 212.) ■ In contrast, an attorney who has been suspended from membership to the State Bar *remains* an attorney at law, but is precluded from practicing law. (*Lyons* v. *United States* (9th Cir. 1963) 325 F.2d 370.)

In *Johnson* v. *State* (1979) 225 Kan. 458 [590 P.2d 1082], appellant argued that he was denied the effective assistance of counsel where his attorney was suspended for nonpayment of fees at the time of trial. The

court distinguished this situation from one in which a layman masquerades as an attorney. The court emphasized that the payment itself has nothing to do with the legal ability of the attorney. The court held that in each instance we must examine the *actual representation* afforded the accused. Appellant therein did not challenge the adequacy of his attorney's performance at trial. The court concluded that since it was undisputed that appellant's representation by his counsel was adequate and effective, he was not denied his constitutional right to the effective assistance of counsel. (At p. 1087.)

Similarly, appellant herein does not assert that his attorney's actual performance was deficient in any way. In fact, the record reveals that counsel put on an able defense by objecting to the use of evidence of other crimes, fully cross-examining the prosecution's witnesses, opposing the late amendment of the information, and calling three witnesses.

Appellant's counsel herein met the standards for adequate representation set forth in *People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R. 4th 1] and *People v. Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]. ■ The court in *Pope* stated that the constitutional right to the adequate assistance of counsel suggests a focus on the *quality of the representation* provided the accused. In *Pope,* the court set out a two-step test to determine the adequacy of representation. The defendant has the burden of proving that: (1) his counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates; and (2) his counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. ■ *Fosselman* held that this second prong may be satisfied where the defendant shows simply that he was prejudiced by his attorney's inadequate performance.

■ Appellant has failed to meet his burden of proving that his attorney did not act as a reasonably competent attorney. He has also failed to show that he was prejudiced in any way by his counsel's representation. Appellant was not denied the effective assistance of counsel.

## II

■ Appellant next contends that the court erred in not referring him to the California Youth Authority (CYA). The trial court properly concluded that it had no authority to order appellant committed to CYA in view of section 8 of Proposition 8.

Section 8 of Proposition 8, which added Welfare and Institutions Code section 1732.5 states: "Notwithstanding any other provision of law, no person convicted of murder, rape or any other serious felony, as defined in

Section 1192.7 of the Penal Code, committed when he or she was 18 years of age or older shall be committed to Youth Authority." Section 1192.7, subdivision (c)(23), defines as a serious felony "any felony in which the defendant personally used a dangerous or deadly weapon; . . ." The jury herein specifically found that appellant had used such a weapon in the assaults and false imprisonment.

This provision applies to the case before us since the crime was committed after June 9, 1982, the effective date of Proposition 8. (*People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149].)

Although the court struck the firearm finding for the purpose of sentencing, it had no authority to strike the jury's finding so as to avoid the impact of Welfare and Institutions Code section 1732.5.

In *People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328], a jury found that defendant had used a firearm in the commission of a robbery. Section 1203.06 prescribes a mandatory prison sentence for those who use a firearm in the commission of certain serious offenses. The court struck the use of the firearm allegation pursuant to section 1385 which provides judicial power to strike allegations which, if proven, would enhance punishment. Defendant was placed on probation for five years. The California Supreme Court held that in enacting section 1203.06 the Legislature did not intend that its mandatory language be subject to section 1385. Consequently, section 1203.06 could not be avoided by employing section 1385 to strike the findings of the jury.[2]

Therefore, the court herein could not avoid the mandatory language of Welfare and Institutions Code section 1732.5 by striking the firearm use allegation for purposes of sentencing. The court properly concluded that appellant was statutorily ineligible for a CYA commitment.

The judgment is affirmed.

Scott, J., concurred.

**WHITE, P. J.**—I respectfully dissent because I think that my learned colleagues legislate law diametric to our state's public policy.[1] Holmes' wis-

---

[2]Although the court held that it was error to strike the firearm use finding and send defendant to county jail instead of prison, the court held that it would be unfair to make defendant serve a second term, since he had already complied with his conditions of probation.

[1]"Judge's ought to remember that this office is *jus dicere* and not *jus dare,* to interpret law and not to make or give law." Sir Francis Bacon's admonition.

dom counseled that "judges do and must legislate, but they can do so only interstitially. . . ."[2] It is my view that there are no chinks, crevices, fissures or ambiguities in California's public policy[3] sufficient to warrant the decision the majority makes herein. Also I agree where[4] it is written that the Legislature, elected as it is at frequent intervals by the People, functions with ability superior to that of the judiciary to declare public policy reflective of the views and aspirations of the public mind.

Apparently Mrs. Medler retained Attorney Washington to defend her son. The record demonstrates conclusively Attorney Washington's knowledge[5] that suspension of his license to practice precluded acceptance of the retainer. "Precluded" because the record in the case establishes that Washington never intended and therefore he did not reinstate ever his privilege to practice law by payment of accrued fees and penalties (§ 6143, fn. 3, *ante*). Consequently, no reasonable conclusion in the premises exists other than Attorney Washington elected to exercise the special privilege knowing fully that assisting appellant's defense against felony charges constituted contempt of court and commission of misdemeanor crimes.[6]

---

[2]Oliver Wendell Holmes, dissenting in *Southern Pacific Co.* v. *Jensen* (1917) 244 U.S. 205 [61 L.Ed. 1086, 37 S.Ct. 524].

[3]That "public policy" prohibiting the unlawful practice of the law is found codified in California's Business and Professions Code section 6125 through 6131 (hereinafter "section" unless otherwise indicated).

Section 6125 conditions the lawful practice of the law upon "active" membership. "No person shall practice law in this State unless he is an active member of the State Bar."

Section 6143 provides: "Any member, active or inactive, failing to pay any fees after they become due, and after two months written notice of his delinquency, *shall be suspended from membership in the State Bar.* [¶] He may be reinstated upon the payment of accrued fees and such penalties as may be imposed by the board, not exceeding double the amount of delinquent dues." (Italics added.) It does not appear that Washington ever sought a fee waiver from the State Bar. Section 6141.1 provides: "The board, for good cause, may waive the payment of the annual membership fee by any member upon the affirmative vote of 12 members of the board."

[4]Hopkins, *Public Policy and the Formation of a Rule of Law* (1971) 37 Brooklyn L.Rev. 323; reprinted by permission of author, in The Judicial Process, Readings, Materials and Cases. Compilation and text by Honorable Judge Ruggero J. Aldisert, U.S. Court of Appeals (3d Cir.), American Casebook Series (1983).

[5]It appears on the record that Attorney Washington's suspension from membership in the State Bar dated continuously from November 16, 1978. Upon official notice of this fact on April 7, 1983, the trial court discharged Washington as counsel of record on May 18, 1983, when he failed to appear and show cause for his malfeasance in office. At the time appellant was awaiting sentence subsequent to his return from diagnostic study at Vacaville, ordered at Washington's last appearance on March 11, 1983. Mrs. Medler, upon being informed, retained the services of Attorney Charles Wright to assist appellant during sentencing proceedings. Wright's motion for a new trial on grounds asserting denial of appellant's right to counsel was denied; this appeal in due course followed.

[6]Section 6126 provides: "*Any person* advertising himself as practicing or *entitled to practice law* or otherwise practicing law, after he has been disbarred or *while suspended from membership in the State Bar, or who is not an active member of the State Bar, is guilty of*

I think it manifest that the Legislature's imposition of criminal sanctions in these shown circumstances expresses clearly a strong public policy reflecting an intention ensuring maximum protection to the public. In sum, the Legislature intended that appellant and Mrs. Medler never suffer the indignity of being victimized by Attorney Washington. Moreover, in light of a statutory scheme defining and making it unlawful to practice law while one's license is suspended, I think a court's "jurisprudential temperament" should reflect more of a "sense of limitation and a sparse inclination" than that exhibited in the lead opinion before announcing a ruling creating an exception in stark contrast to the Legislature's determination.[7] Particularly do I think stricter adherence to separation of powers as a tenet is ordered when, as in this case, the appellant's constitutional right to the assistance of counsel is at issue, ultimately, of course, determinative of the decisive issue, i.e., the trial court's jurisdiction.

Clinging to a view I think certainly consonant with, if not mandated by, the public policy designed by our Legislature, I hold that the trial "proceeding[s at bench are] void; the occurrences therein are vitiated, transpirations otherwise legal go for naught." (*Harrison* v. *United States* (D.C. Cir. 1967) 387 F.2d 203, 212.) Also, I think the "proceedings" denied appellant's constitutionally afforded right to due process of law.

It is settled law that if Attorney Washington appeared herein as a layman practicing his egregious deception upon the court, jury, opposing counsel and his unsuspecting clients, the judgment would be held void. (See *Harrison* v. *United States, supra,* at p. 212; see also majority opn. at p. 930, citing California cases in accord.) The rationale in cases holding void representation by unlicensed counsel is that laymen, no matter how intelligent or well educated in the law they may be, are imposters if they masquerade as qualified attorneys. The Sixth Amendment right of the accused to the assistance of competent, effective counsel at every stage of criminal proceedings including preparation and trial is a precious right. Consequently it is unthinkable that a right so precious and a responsibility so grave ever be entrusted to one who has not been admitted to the practice of the law.

---

*a misdemeanor."* (Italics added.)

See also section 6128: "Every attorney is guilty of a misdemeanor who either: [¶] (a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, *with intent to deceive the court or any party."* (Italics added.)

See also section 6127: "The following acts or omissions in respect to the practice of law are *contempts of the authority of the courts:* [¶] (a) Assuming to be an officer or attorney of a court and acting as such, without authority. [¶] (b) Advertising or holding oneself out as practicing or as entitled to practice law or *otherwise practicing law in any court, without being an active member of the State Bar.* [¶] Proceedings to adjudge a person in contempt of court under this section are to be taken in accordance with the provisions of Title V of Part III of the Code of Civil Procedure." (Italics added.)

[7]The Judicial Process, Readings, Materials and Cases (*ante,* fn. 4) at page 88.

The legislative intent in enacting section 6143 (*ante,* fn. 3, p. 933), is not open to doubt. The statute funds the State Bar treasury. (See § 6144.) Equally, if not more significant, the statute regulates the practice of law. The measure mandates that fee delinquent attorney's membership in the State Bar *shall be suspended* until reinstatement. Suspension from membership in the State Bar under section 6143 is summarily imposed upon due notice by the Board of Governors. Section 6143 is a constitutional exercise of the police power. (See *Herron* v. *State Bar* (1944) 24 Cal.2d 53, 64 [147 P.2d 543].)

Upon reading section 6143 in conjunction with section 6125, equally clear is the legislative intent that fee delinquent attorneys are prohibited from practicing law in this state while under a section 6143 summary membership suspension.[8] Unquestionably emphasis is superfluous. Nevertheless, I repeat that I think it is clear that the Legislature intended that Attorney Washington have no legal standing to fulfill the Sixth Amendment's pledge to appellant while his active membership in the State Bar remained under suspension. Any lingering doubt that the Legislature intended no distinction be drawn between a masquerading layman and Attorney Washington is dispelled by section 6126 (*ante,* fn. 6, p. 933). A layman, as well as an attorney under "suspension," is a person, I hold, who is not an active member of the State Bar.[9] In any case, Attorney Washington concededly is a person "suspended from membership in the State Bar"; as regards such "persons" without distinction, the Legislature has determined that if and when they do practice law both alike are equally "guilty of a misdemeanor."

I conclude that when the Legislature has in the shown circumstances ordained that the public welfare *requires* (§ 6125) that Attorney Washington not assist appellant's defense, this court should refrain from a ruling implying that Attorney Washington *may* nevertheless willfully give that assistance, in which event the resulting judgment is only voidable and not void as prohibited by public policy.[10] I find the lead opinion's result to be un-

---

[8]This view, I think, is consistent with the legislative intent *"precluding"* attorneys from practicing law during *suspension* resulting from formal court discipline reaching judgment. Section 6117 provides: "During such disbarment or suspension [by judgment] the attorney shall be precluded from practicing law. [¶] When disbarred, his name shall be stricken from the roll of attorneys."

[9]The other plausible interpretation is that the Legislature intended Attorney Washington's status remain that of "active" member, but as a suspended member he was precluded from practicing law until reinstated.

[10]See 1 Witkin, Summary of California Law, (8th ed. 1973) Contracts, sections 372, 373 at page 314. Notwithstanding courts' reluctance to hold contracts void, I hold that Attorney Washington's agreement to represent appellant void as being contrary to the policy of section 6126 and "good morals" (see Civ. Code, § 1667). In addition, there is a doctrine that a contract to do an act prohibited by statute is illegal.

justly incongruous. I assume fully that my colleagues in no way intend to condone Attorney Washington's crimes; nevertheless, the seeds of my dissent are sown when the lead opinion fails to condemn outright not only Washington's crimes but his breach of fiduciary duty to Mrs. Medler and appellant, his contempt of court, his lack of integrity, and his conduct violating public trust.

In *McGregor* v. *State Bar* (1944) 24 Cal.2d 283, at page 288 [148 P.2d 865], our Supreme Court found reason to quote with approval from *Townsend* v. *The State Bar* (1930) 210 Cal. 362, at page 364 [291 P. 837], " 'The right to practice law not only presupposes in its possessor integrity, legal standing and attainment, but also the exercise of a special privilege, highly personal and partaking of the nature of a public trust.' " At length I have contended that in light of Attorney Washington's decision opting that his active membership in the State Bar remain under suspension, the Legislature stripped his "legal standing" to practice law. Notwithstanding this fact, I think incontrovertible, the lead opinion seizes upon Attorney Washington's "legal attainment" recognizing (see majority opn. at pp. 930-931) but attaching no significance to his lack of "legal standing" precluding him from legally practicing law. The lead opinion is "incongruous" because it allows Attorney Washington's appearance herein, subject, of course, to the Sixth Amendment's requirement of effective assistance while knowing that the Legislature has determined his appearance to be a misdemeanor with total indifference to the quality of his representation. Because the record establishes neither a moral nor legal justification for Attorney Washington's actions herein, I think it "unjust" for this court to hold that before appellant must show he has been prejudiced beyond a showing that he did not receive that bargained for and reasonably expected.

I think *Lyons* v. *United States* (9th Cir. 1963) 325 F.2d 370, cited in the lead opinion at page 930, is a precedent serving to misdirect my colleagues' "judicial" temperament. In *Lyons* District Judge MacBride relied on sound dictum expressed by Justice Carter in *Friday* v. *State Bar* (1943) 23 Cal.2d 501 at page 510 [144 P.2d 564]. In *Friday,* the California Supreme Court, after noting at page 506 the wording of section 6117, declined adoption of a State Bar Board's recommendation requiring Attorney Lyons, then suspended six months for "solicitation of legal business," (*id.,* at p. 507) to first pass the sister state's attorney's examination before resuming the practice of law. After noting that legislative enactments like section 6117 are not limitations but in aid of the court's power to discipline attorneys, the *Friday* court found it significant that the Legislature had not seen fit to require an examination in Friday's circumstances. (*Id.,* at pp. 506-507.) Earlier, at page 506, the *Friday* court noted that section 6117 does not require that a suspended attorney's name be stricken from the rolls. "At the

end of the period of suspension, he may again practice without any order of reinstatement." (Compare § 6143 in accord.)

In *Friday, supra,* the court concluded that imposition of a condition requiring reexamination of suspended attorneys, as is the case for disbarred attorneys, would be *discriminatory, unfair (id.,* at p. 508), *unreasonable and lacking in the essential pertinency to the misconduct involved. (Id.,* at p. 509.) At page 510 the *Friday* court reinforced its conclusion with sound dictum, i.e., ". . . no such requirement should be invoked in cases of mere suspension of an attorney from practice, as a suspended attorney is still a member of the bar, but his right to practice is suspended for a limited period."

In *Lyons, supra, Friday's* sound dictum appears significantly altered at page 374; arguably, it is likewise dictum, albeit sound.[11] District Judge MacBride meticulously posits as regards *Lyons* what I contend is true of Attorney Washington, i.e., ". . . if he was merely suspended, he was still an attorney at law, though *he could not legally practice until the expiration of the period of suspension."* (Italics added.)

The point to be underscored is that in neither the *Friday* nor *Lyons* decisions were the respective courts required to address the issue in the factual context we adjudicate, i.e., the impact upon the criminally accused's Sixth Amendment right when deceitfully assisted by a summarily suspended member of the bar, a "practice" that the Legislature has, in the exercise of the police powers, decreed to be a crime.

*Johnson* v. *State* (1979) 225 Kan. 458 [590 P.2d 1082] is obviously distinguishable from the case at bench. It bears emphasis that this court is required to decide the "issues" in light of a State Bar Act legislating a strong public policy defining and criminalizing the *unauthorized* practice of the law. In contradistinction, the Supreme Court of Kansas in *Johnson* decided the "issue" solely in light of its rules of court, apparently delegated by the Kansas Legislature to so legislate. Upon reading *Johnson,* there is no suggestion that the Kansas Legislature has enacted a public policy mak-

---

[11] In *Lyons,* Attorney Lyons' conviction of a felony had been affirmed by the Supreme Court. His federal prosecution put at issue whether he violated laws (18 U.S.C. §§ 1001, 1002) making it a federal crime to cause a petitioner to utter false statements in his or her petition for bankruptcy; in Lyons' instance two petitioners had declared they had not paid an attorney to prepare and file their petitions. Lyons had prepared and filed the petitions receiving fees for his services. Lyons testified that he was not disbarred but ". . . suspended from practice." The trial court charged that Lyons was an attorney at law within the meaning of the charged federal statutes. Thus, on appeal the *Lyons* court cited to *Friday, supra.* However, *Lyons'* decisive holding is that it is not plain or prejudicial error to instruct assuming the fact at issue, i.e., whether Lyons at relevant times was an attorney, when the fact was assumed or uncontroverted.

ing it a crime to practice law while under suspension. Obviously, rules of court could not criminalize such unauthorized practice. The Kansas Supreme Court, then, was not constrained by the tenet, separation of power, as is the case, I contend, for this court. Quite the contrary, the Kansas Legislature apparently delegated the power to formulate public policy as regards the unauthorized practice of law to the Supreme Court to be exercised through its inherent rule-making power disciplining officers of the court, i.e., attorneys.

In *Martinez* v. *State* (1958) 167 Tex. Crim. 97 [318 S.W.2d 66], the Court of Criminal Appeals of Texas adjudicated a capital case in which the trial court appointed an annual fee delinquent attorney unaware that at the time he was not a "practicing" attorney within the meaning of Texas statutory law. In Texas the State Bar Act limits practice of law to members of the state bar and subjects them to the rules of the Supreme Court of Texas. Under the Supreme Court rules, a Texas attorney is suspended from membership and his or her name stricken from the rolls upon due notice after 60 days delinquency in payment of fees. While a court could enjoin their practice, reinstatement to "practicing" status is self-executing upon payment of the delinquency. The *Martinez* court set aside its previous affirmance of Martinez' capital felony conviction, holding that it was error, when appointing counsel, not to follow the mandatory provisions of the statute requiring the appointment of "a duly qualified practicing attorney" to represent an accused charged with a capital felony. As regards the Texas Court of Criminal Appeals "jurisprudential" temperament the court said of its action that it was "in pursuance to the mandates of the Legislature and the rules of the Supreme Court of Texas . . . prohibiting all persons not members of the State Bar from practicing law in this State. Any other holding than the one we now make would nullify the entire State Bar Act." (*Id.,* at p. 71.)

However, the dissent in *Martinez* "had its day" in *Hill* v. *State* (Tex. Crim. 1965) 393 S.W.2d 901, when overruling *Martinez, supra.* (*Id.,* at p. 904.) By way of afterthought the *Hill* court took judicial notice of the fact that Martinez' appointed counsel "purged" himself of delinquency by remitting his fees before the *Martinez* case had been disposed of on rehearing. The *Hill* court reasoned that the state bar rules and the statute admit of a ruling holding the State Bar Act retroactive in its application. By payment of his delinquency Martinez' attorney's acts as an attorney were "revitalized . . . and given validity" during the interim period of his suspension. (*Id.,* at p. 904.) "He, in effect enters a nunc pro tunc judgment for himself. [Citation omitted.]" (*Ibid.*) (See *Beto* v. *Barfield* (5th Cir. 1968) 391 F.2d 275.)

In sum, in Kansas and Texas practicing law while a suspended (delinquent fees) member of the bar constitutes *unauthorized* but not *unlawful* practice

of law. Apparently in neither state is it a crime as is the law in California. In Kansas the public policy is formulated by the supreme court's rules of court; in Texas by the State Bar Act, statute and rules of court. California's policy, clearly stronger by virtue of statutes making it a crime to engage in such practice, is formulated, until today, solely by the Legislature. Stated otherwise, in Kansas the lead opinion would draw no dissent; stare decisis would carry the day. In Texas, appellant would receive, I think, a new trial because Attorney Washington's services assisting appellant's defense were never "revitalized and given vitality" by payment of five years delinquent fees nunc pro tunc. In California, the result I have heretofore urged is, I think, compelled. The majority's view, I fear, arbitrarily and impermissibly nullifies the Legislature's mandate. (§§ 6125-6131.) Surely, Attorney Washington's actions if charged with violating section 6126 could not be successfully defended at law upon a showing that he paid his delinquent fees before the judgment convicting appellant became final; or upon a showing that he rendered competent effective assistance to appellant's defense?

Obviously I do not think such defenses would be viable; and in any case, I would withhold application of the *Pope/Fosselman* standard (*People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]) in cases typified by Attorney Washington's "practice," without regard to the "quality" of legal representation. It is my view that to do otherwise denigrates the office of the active members of the bar who assiduously value and protect their hard-earned right to be viewed by the public as possessing integrity, legal standing and attainment qualifying them to practice law. I find it unthinkable that a reasonably competent attorney acting as a diligent advocate would willfully undertake to assist a criminal defense knowing that such representation subjected him or her to prosecution and conviction of a misdemeanor. Manifestly, the Legislature intended, without exception, its standard requiring active or, if you will, nonsuspended membership in the State Bar, i.e., by the payment of annual bar fees, to be the first criteria marking an attorney professionally competent. If it is to be otherwise, the Legislature has indicated by enacting a comprehensive State Bar Act that it, in the interest of the populous, functions best to make that determination.

Secondly, as this case illustrates, trial and appellate courts are likely to engage unwittingly in a charade when they apply *Pope/Fosselman* standards deciding effective assistance of counsel in a case such as that at bench. California attorneys take an oath swearing them in to be counselors at law in addition to being attorneys at law. But counseling at law is sterile unless it relates to the client's acts, personality, profile, life background, goals and aspirations. Upon intense review, I conclude that this is a case from inception calling upon an attorney's counseling skills and that of appropriate

allied professions if only for one of two reasons, i.e., to prepare for the court the defendant's complete profile in order to perform effectively the defense attorney's duty to arrive at a fair and intelligent plea or sentence bargain. (*People* v. *Cropper* (1979) 89 Cal.App.3d 716, 719-720 [152 Cal.Rptr. 555].)

On this record revealed to be obviously guilty, the trial of young Medler was an exercise in futility unless it be viewed positively as an exercise demonstrating for his enduring benefit the certainty both in the error of his wastefully violent ways and the accountability our justice system demands. Upon reading the probation report it is clear that appellant is a young man with deep-seated psychological problems dramatically revealed in totally inappropriate episodes showing violence. (An inappropriate show of evidence occurred when the verdict was returned.) Thus appears the other reason, arguably even more essential than the first, that I think the reasonably competent diligent advocate is required to be possessed with consummate counseling skills. I have always viewed it to be the duty of the defense attorney, privileged to the accused's innermost confidences, to initiate the counseling process that the young Medlers must voluntarily pursue in the years following their punishment, given our institutions of incarceration minimal resources to effectively save minds and lives. Many persons who successfully learned to cope look back and reflect, "someone helped me"; while too many of those who can't cope look back regretfully and reflect, "I was crying for help; no one came and I just didn't know where to seek help."

The germane point I seek to make, of course, is that when it comes to assessing the effectiveness or competency of defense advocate's counseling performance, in vastly more instances than not it is impracticable if not impossible and therefore an unfair burden to require those in appellant's posture to show *Pope* error or *Fosselman* prejudice. In a real sense, more time must expire before that fact is demonstrable, if ever.

Finally, in addition to being a violation of appellant's Sixth Amendment right to the assistance of counsel, I think also that appellant's Fifth Amendment "due process" right, made applicable through the Fourteenth Amendment, was denied in this case. Of "due process," courts are fond to rule that it is a variable concept; but any variation must at a minimum respect the individual's dignity. It has always appeared to me that in a society of free men and women under law the courts exist to insure, when at issue, the individual's legitimate expectations in the premises. Appellant and Mrs. Medler, I think, legitimately, in light of section 6125 specifically, and the State Bar Act generally, expected that Attorney Washington possessed at all times not only knowledge of the law but integrity and legal standing qualifying him to assist in defending his liberty interest. To be told in effect that their expectations were not reasonable and therefore not entitled to this

court's protection is, I think, an insult to their dignity. No sound reason exists explaining why members of the public should not in every instance receive the identical court process in total that the Legislature intended they should have, i.e., the assistance of an active member of the State Bar under no suspension disabling him from practice.[12] Admittedly the result reached in the lead opinion saves the court considerable time and expense; but the right to the assistance of counsel and due process demonstrated in this record to have been denied appellant are fundamental rights necessarily outweighing considerations of time and expense.[13]

In any case, while I am convinced for the reasons expressed herein that the judgment must be reversed, I would not expect that the case will be retried. Reversal in this case for all practical purposes amounts to a remand for resentencing.

Upon appellant's resentencing before the same trial judge, I think that in light of *People* v. *Fritz* (1985) 40 Cal.3d 227 [219 Cal.Rptr. 460, 707 P.2d 833], the court could in its discretion strike the "firearm finding" (see majority opn., p. 932) and commit appellant to the California Youth Authority provided, of course, an updated probation report together with the showing made by appellant's diligent counsel warrants, in the opinion of the sentencing judge, such disposition.

A petition for a rehearing was denied March 21, 1986. White, P. J., was of the opinion that the petition should be granted.

---

[12]If the majority's result is the correct one, a nice question raised in appellant's brief requires an answer. I think the trial court correctly removed Attorney Washington from the case but erred requiring reversal in not granting appellant's motion for a new trial with defense counsel that was an active member of the bar laboring under no disability. But if the majority is correct and Attorney Washington's representation was lawful in all respects, then the court must be perceived as discharging counsel of appellant's choice without a waiver of that constitutional right on the record. If, as my colleagues hold, Attorney Washington's assistance fulfilled appellant's Sixth Amendment right, appellant, having retained his attorney, was entitled to his services at every stage of the proceedings, not the least important of which is sentencing. (See *People* v. *Cropper, supra,* 89 Cal.App.3d 716, 721.)

[13]"Delays of justice are never desirable, but they are preferable to injustice." (Editorial, *Dwindling Justice for Hurricane Carter,* N.Y. Times (Nov. 14, 1985) p. 30.)