Paul ALEXANDER; Frederik
Poelman, Plaintiffs,

v.

Gerald K. ROBERTSON,
Defendant-cross-claimant-Appellant,

v.

PROTECTIVE NATIONAL INSURANCE
COMPANY OF OMAHA; David Fraser,
Inc., Cross-claim-defendants-Appellees.

Nos. 88–1855, 88–15170.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1989.

Decided Aug. 14, 1989.

Brian W. Walsh, Bishop, Barry, Howe, Haney & Ryder, San Francisco, Cal., for defendant-cross-claimant-appellant.

F. Conger Fawcett, Graham & James, San Francisco, Cal., for cross-claim-defendants-appellees.

Before POOLE, BOOCHEVER and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

This case involves two consolidated appeals involving Appellant, Gerry K. Robertson. In case No. 88–1855 Robertson appeals from a judgment denying him relief on his cross-claims against Appellees David Fraser, Inc. ("Fraser") and Protective National Insurance Company of Omaha ("Protective") for indemnification of Robertson's liability to Paul Alexander and Frederik Poelman. In case No. 88–15170 Robertson appeals from an order denying his Rule 60(b) motion for relief from that adverse judgment. The district court had jurisdiction of this case under 28 U.S.C. § 1332(a)(2) (1982). We have jurisdiction under 28 U.S.C. § 1291 (1982). We affirm the district court's judgments in both appeals.

I

Alexander and Poelman, both residents of the Commonwealth of New Zealand, filed a complaint in federal district court in January 1987 against Robertson, Fraser, and Protective to collect a deficiency judgment arising out of the sale, repossession, and subsequent resale of the vessel, Sunquest II. Robertson answered the complaint, filed a counter-claim, and also cross-

claimed against Fraser and Protective. The district court found that Alexander and Poelman had brought the Sunquest II to the United States and arranged through Fraser to find a buyer. Joseph Rinehart, an independent sales agent for Fraser, located Robertson who agreed to buy the vessel on the following terms: $65,000 paid upon delivery; an additional $5,000 due 90 days after delivery; and the remaining balance of $205,000 due one year after delivery. The $210,000 that was not paid immediately was to be financed at a rate of 15% per annum and to be paid in monthly installments to Rinehart who, in turn, agreed to transfer the installments to Alexander and Poelman in New Zealand.

Robertson failed to pay Rinehart $10,119.50 of the interest installments that became due and, in addition, defaulted on the $205,000 principal payment that came due on June 14, 1986. Alexander returned to the United States, repossessed the vessel, and resold it for a net recovery of roughly $183,000. Around the same time Alexander learned that Rinehart had kept for himself approximately $11,550 of the $25,818 in interest payments actually paid by Robertson. He informed Fraser of the possible impropriety. Rinehart was subsequently terminated as Fraser's sales agent, not because of what Alexander had discovered, but because Fraser learned that Rinehart was not a licensed broker. Alexander and Rinehart subsequently reached an agreement whereby Rinehart returned the embezzled funds plus interest and attorney fees.

Based on these facts the district court ruled that Alexander and Poelman were entitled to a deficiency judgment against Robertson in the amount of $46,442.06 plus interest and attorney fees. The district court further ruled that the amount of the judgment was to be above and beyond the $10,000 security bond tendered by Protective on behalf of its insured, Fraser, as a settlement of any claims Alexander and Poelman would have against them for the malfeasance of Rinehart. Finally, the district court ruled that Fraser and Protective were neither liable to Robertson for Rinehart's misconduct nor did they have any

obligation to indemnify Robertson for his liability to Alexander and Poelman. Robertson then filed a timely notice of appeal in case No. 88–1855.

Soon thereafter Robertson learned that David Warren, the attorney who had represented Fraser and Protective, had not been licensed to practice law in the State of California at the time of the trial. Robertson also learned that Warren had failed to become a member of the bar of the Federal District Court for the Northern District of California and to notify the district court, as required by Local Rule 110–1, that he no longer was a member of the California bar. With this undisputed information in hand, Robertson returned to the district court and filed a Rule 60(b) motion for relief from the judgment. The Court of Appeals granted a limited remand in case No. 88–1855 for a determination of Robertson's motion. Without downplaying the seriousness of Warren's misconduct, the district court entered an order denying the motion on the ground that voiding the judgment would have been an inappropriate sanction under the circumstances. Robertson then filed a second timely notice of appeal in case No. 88–15170. The appeals in both cases were consolidated for review. We address first Robertson's arguments that the district court erred in denying him relief on his cross-claims against Fraser and Protective and then we consider the denial of his Rule 60(b) motion for relief from that judgment.

## II

Robertson's appeal in case No. 88–1855 involves the district court's ruling that neither Fraser nor Protective are liable to Robertson for the damages Robertson allegedly sustained from Rinehart's misappropriation of the installment payments. Robertson asserts several theories of liability against Fraser: (1) Fraser, through Rinehart, acted as an escrow agent for the sale of the Sunquest II, and as such had a fiduciary relationship with both the buyer and seller; Rinehart's conversion of the installment payments breached that fiduciary duty, and therefore Fraser is liable to Robertson for the losses he sustained; (2)

Rinehart was not a licensed broker, as required by California law, and therefore Fraser is obligated to indemnify Robertson for any losses sustained because of his conduct; and (3) Fraser's failure to terminate Rinehart immediately after learning of his misappropriation of the installment payments constituted ratification of his acts for which Fraser was directly liable. Robertson asserts that if Fraser is held liable Protective would then be indirectly liable on the $10,000 security bond. Although unclear, these contentions apparently challenge the district court's findings of fact and are, therefore, reviewed for clear error. Fed.R.Civ.P. 52(a).

█ The validity of each of these contentions depends on a single fact that simply is not present: Robertson did not suffer any compensable damages due to Rinehart's misappropriation of the installment payments. It is undisputed that Rinehart agreed to return the embezzled installment payments plus interest and attorney fees to Alexander and Poelman. Robertson was thus never even thought responsible for the interest payments that he had made to Rinehart but which Rinehart had never sent to Alexander and Poelman. Indeed, until this case went to trial Robertson apparently disavowed any responsibility for these diverted installment payments. He apparently assumed, as did Alexander and Poelman, that Rinehart was Alexander and Poelman's agent for purposes of transmitting the installment payments. Robertson has thus failed to show, as a matter of fact, that he suffered damages because of Rinehart's alleged breach of fiduciary duty.[1] Each of Robertson's theories of liability is defective for this reason.

### III

█ Robertson's appeal in case No. 88–15170 involves Warren's unauthorized practice of law. Neither party questions the essential facts: (1) Warren resigned from the California bar *before* trial began; (2) he had never applied for membership in the bar of the Federal District Court for the Northern District of California; (3) he violated Local Rule 110–1 by not informing the district court of his status in the state bar; and (4) *none* of the parties knew of Warren's misconduct until *after* the trial ended. The question that we must consider is whether the district court abused its discretion in not vacating the judgment based on these facts. *See Bank of Am. Nat'l Trust & Savings Assoc. v. Mamakos,* 509 F.2d 1217, 1219 (9th Cir.1975) (applying abuse of discretion standard of review to motion brought under rule 60(b)(1)).

Robertson cites to several dated California authorities for the proposition that a judgment will be set aside on appeal, or even by collateral attack, if it is later discovered that either of the party's representatives was not a licensed attorney. *See, e.g., City of Downey v. Johnson,* 263 Cal.App.2d 775, 69 Cal.Rptr. 830 (1968); *People ex rel. Dep't of Public Works v. Malone,* 232 Cal.App.2d 531, 42 Cal.Rptr. 888 (1965); *see also* 7 C.J.S. *Atty & Client* § 31, at 869 (1980); Recent Decision, 29 Cal.L.Rev. 237, 238 (1941) (describing these authorities as holding "that a proceeding participated in by a person as an attorney who was not authorized to practice law in the state is error and will be reversed upon appeal"). Fraser and Protective, on the other hand, rely on a more recent California decision holding that this type of sanction is appropriate only where the party whose interest the unlicensed attorney represented fails to succeed in the prior proceedings. *See Gomes v. Roney,* 88 Cal. App.3d 274, 151 Cal.Rptr. 756 (1979); *accord* Recent Decision, *supra,* at 240. Neither party refers to any federal cases decided under Rule 60(b) that would control this precise issue. To our knowledge, then, the question is one of first impression in the federal courts.

Robertson relies on the following language in Rule 60(b) as providing support

---

1. Robertson's brief intimates that he was damaged, although not monetarily, because Rinehart's actions "precipitated" Alexander's repossession of the Sunquest II. The record does not support his factual assertion that Alexander became concerned about the installment payments before the final principal payment fell due. But even if the record did support this assertion, there is, in the words of the Appellees, no such tort as "inducement to come to Sausalito." Robertson's theory of damages is simply unavailing.

for his contention: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party...." Fed.R.Civ.P. 60(b). Robertson argues that the "fraud" committed by Warren falls within the terms of this clause, and therefore the district court abused its discretion in denying his motion for relief from the judgment. Robertson implicitly recognizes that although Warren actively participated in the trial his position as a nonlawyer had no real effect on the district court's initial judgment; Robertson asserts nonetheless that a showing of "prejudice" is not required under Rule 60(b)(3). Fraser and Protective respond that Rule 60(b)(3) does not apply because the fraud committed here was not by an adverse "party" but by the party's representative, and in any event Robertson has not shown that Warren's conduct affected the initial judgment. We agree with Fraser and Protective's assertion that Rule 60(b)(3) does not apply directly to this situation because the offending person was not a "party" to the proceedings.

But this conclusion does not end the matter, for there is other language, found further in the Rule, that provides: "This rule does not limit the power of a court ... to set aside a judgment for fraud upon the court." *See generally* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.33 (2d ed.1978). This provision is clearly not limited to fraud committed by an "adverse" party, *e.g.*, *Toscano v. Commissioner*, 441 F.2d 930, 934–37 (9th Cir.1971) (fraud committed by complainant's husband and attorney), nor does it necessarily require a showing that the party was prejudiced by the misconduct, *see* 7 J. Moore & J. Lucas, *supra*, ¶ 60.33, at 508–09 ("principle has been applied even though it was not established that the judgment was the product of the fraud"). The Supreme Court, for example, has explained this provision of the Rule not so much in terms of whether the alleged misconduct prejudiced the opposing party but more in terms of whether the alleged misconduct "harms" the integrity of the judicial process:

> [T]ampering with the administration of justice in the manner indisputedly shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Hazel–Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944); *see also* Comment, *Rule 60(b): Survey and Proposal for General Reform*, 60 Cal.L.Rev. 531, 557 (1972) (fraud upon the court "may in appropriate circumstances extend to a case where injury to the public is primarily and extraordinarily involved"). Professor Moore, following this rationale, has described the type of fraud that implicates the rule as follows:

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

7 J. Moore & J. Lucas, *supra*, ¶ 60.33, at 515. Robertson's argument that Warren's misconduct subverts the integrity of the judicial process appears to fit neatly within the confines of this rationale. *See H.K. Porter Co. Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir.1976) (dicta) ("Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court."); *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1079 (2d Cir.1972) (an attorney might commit fraud upon the court by instituting an action "to which he knew there was a complete defense").

There is, nevertheless, no evidence that Warren's misconduct was, as this circuit has suggested before, "designed to improperly influence the court in its decision." *England v. Doyle,* 281 F.2d 304, 309 (9th Cir.1960). Nor is it preordained that the unlicensed practice of law, without more, inhibits a court from adjudging cases impartially. In this regard, the following thoughtful criticism of an older California decision is helpful:

> [T]he holding that a judgment rendered in a proceeding in which an unauthorized attorney has practiced law is neither void nor subject to reversal upon appeal should be approved. The practicing of law by the attorney in the instant case in no way lowered the public esteem for the legal profession, nor is it possible to perceive how the court was defrauded. It cannot be said that the plaintiff, having secured a favorable judgment, was injured because he was represented by an ineligible attorney. If the basis for holding such a judgment void is the protection of the party represented, there would seem to be no sound ground upon which to declare the judgment in this case void inasmuch as the party so represented was the successful litigant. The ineligible attorney should be punished; but the right of an attorney to appear for one of the parties is a collateral matter having nothing to do with the merits of the case between the parties.

Recent Decision, *supra,* at 240 (footnote omitted). The district court implicitly found this reasoning persuasive, as do we.

We thus agree with the district court that setting aside the judgment on Robertson's Rule 60(b) motion is an inappropriate sanction under these circumstances because it will neither protect the integrity of the judicial system nor vindicate the interests of a party victimized by the unlicensed practice of law. As discussed in Part II above, Robertson cannot succeed on his cross-claims against Fraser and Protective. In essence, then, setting aside the judgment would be a "fruitless" gesture that would hardly bolster the public's perception of the judicial process. In addition, because none of the parties were aware of Warren's misconduct, vacating the judgment would "punish" parties who are in no way responsible for the "fraud." Finally, there are other remedies available to protect the judicial system from this type of misconduct. Indeed, the district court has already issued an order requiring Warren to show cause why he should not be subjected to disciplinary proceedings. The State of California also makes it a misdemeanor for one to engage in the unauthorized practice of law. *See* Cal. Bus. & Prof.Code § 6126 (West 1974). As did the district court below, we believe recourse to these proceedings would operate adequately to convey the message to the public that the courts will not tolerate this type of misconduct.

IV

The district court's judgments in both appeals are AFFIRMED.