In re INTERMAGNETICS AMERICA, INC., Intermagnetics Engineering, Inc.; American Video Tape Manufacturing Co.; Magnetic Tape International; Intermagnetics International Sales Corp.; Amex Export, Inc., Debtors.

In re Amarjit Singh ANAND, an individual, fdba Agra Enterprises, Debtor.

Leonard L. GUMPORT, Chapter 11 Trustee of the Estates of Debtors Intermagnetics America, Inc., Intermagnetics Engineering, Inc., American Video Tape Manufacturing Co., Intermagnetics International Sales Corporation, Amex Export, Inc., and Amarjit Singh Anand fdba Agra Enterprises, Plaintiff-Appellant,

v.

CHINA INTERNATIONAL TRUST AND INVESTMENT CORPORATION also known as China International Trust and Investment Corporation (Holdings), a commercial instrumentality of the People's Republic of China, Defendant-Appellee.

No. 90-55160.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 1990.

Decided Feb. 26, 1991.

See also 101 B.R. 191.

Leonard L. Gumport, Hufstedler, Miller, Kaus & Beardsley, Los Angeles, Cal., for plaintiff-appellant.

David A. Ranheim, Dorsey & Whitney, Minneapolis, Minn., for defendant-appellee.

David H. von Wittenburg, U.S. Trustee, Los Angeles, Cal., for amicus.

Before POOLE and THOMPSON, Circuit Judges, and PRO, District Judge.*

PRO, District Judge:

This case arises out of bankruptcy proceedings regarding Intermagnetics America, Inc. and its subsidiaries ("Intermagnetics"). The Intermagnetics corporations entered bankruptcy in 1984. Plaintiff–Appellant Leonard Gumport, Trustee in Bankruptcy for Intermagnetics, here appeals the district court's grant of summary judgment in favor of Defendant–Appellee China International Trust and Investment Corporation ("CITIC"), on Defendant's motion to dismiss.

## FACTS

Intermagnetics is made up of California corporations organized to manufacture and sell audio and video tapes and related products. Intermagnetics filed petitions for Chapter 11 protection in May 1984 in the

* Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

United States Bankruptcy Court for the Central District of California. Amarjit Singh Anand became the chief executive officer of Intermagnetics in 1984.

On October 22, 1985, the Intermagnetics debtors as debtors-in-possession filed an application under 11 U.S.C. § 363(b) for bankruptcy court approval of a lease-option agreement with 3D Media, Inc. In the October 22 application, Intermagnetics proposed to sell its inventory and leases to 3D Media for $1 million and to lease its equipment to 3D for $500,000 per year. In support of the application, Anand submitted a declaration in which he identified himself as the chief executive officer of the Intermagnetics debtors. Anand swore in the declaration that: "I believe that 3D Media's offer is in the estate's best interests.... To date, 3D Media's offer is the only substantial written offer the Debtors have received."

During October 1985, various creditors of Intermagnetics filed objections to the proposed lease and purchase option agreement between 3D Media and the Intermagnetics debtors. On November 7, 1985, the day before the scheduled hearing on Intermagnetics' application for bankruptcy court approval of the lease-option agreement, Intermagnetics filed an "ex parte application for approval of purchase agreement and for authority to sell personal property free and clear of liens and interests" in which it sought immediate bankruptcy court approval of a revised agreement which provided for an outright sale of Intermagnetics to 3D Media.

On November 8, 1985, the bankruptcy court conducted a hearing on the ex parte sale application. No live testimony was received at the hearing, but various creditors questioned Anand's credibility and the valuation of the assets of Intermagnetics.

On December 11, 1985, the bankruptcy court approved the sale. In its order, the bankruptcy court found that the sale was in the best interest of the parties under the circumstances, that the sale price was the best obtainable under the circumstances, and that the notice was sufficient. The court also stated:

IT IS FURTHER ORDERED that the approval and authorization to sell pursuant to this Order are subject to the representations and warranties set forth in the attached "Declaration of Amarjit Singh Anand"....

Anand's Declaration included a representation that Anand would receive no direct or indirect benefit from the sale to 3D Media. On January 15, 1986, the sale of Intermagnetics to 3D Media closed.

Unknown to the bankruptcy court at the time it entered the December 11, 1985 order was the fact that in January 1985, Anand secretly negotiated with Appellee CITIC, a commercial instrumentality of the People's Republic of China, to sell the Intermagnetics assets for nearly $16 million. In May 1985, 3D Media made an offer to purchase the assets of Intermagnetics for $1 million down and $5 million payable over six years, subject to bankruptcy court approval. Anand secretly owned and controlled 3D Media with his partner Mehdi Karbassi. In September 1985, CITIC secretly agreed to purchase the Intermagnetics assets through 3D Media and another shell corporation owned and controlled by Anand. CITIC refrained from bidding against 3D Media in bankruptcy court and took a 5% commission or discount on its original offer in return. This agreement was concealed from the bankruptcy court.

In November 1987, creditors of Intermagnetics applied to the bankruptcy court for appointment of a Trustee based on documented allegations that Anand, Karbassi, and 3D Media had fraudulently manipulated the 1985 Intermagnetics sale. In December 1987, the bankruptcy court appointed Appellant Leonard Gumport as Trustee, thereby terminating Anand's control of Intermagnetics and his status as debtor-in-possession.

The Trustee pursued litigation in the bankruptcy court against Anand, Karbassi, 3D Media, and others for their misconduct. The Trustee asserted several claims including one, under 11 U.S.C. § 549, to avoid an unauthorized transfer of property of a bankruptcy estate. The Trustee alleged that, because the sale was approved "sub-

ject to" the representations of Anand which turned out to be false, the sale was not authorized and could be rescinded. On June 7, 1988, the bankruptcy court issued a preliminary injunction in that case, based on findings that the claims asserted were likely to succeed on the merits.

In October 1988, the Trustee discovered evidence that CITIC was involved in the fraudulent transaction and filed a complaint against CITIC in the bankruptcy court on November 7, 1988. The action was transferred to the district court based on the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–11, which provides federal jurisdiction for suits against a foreign state. On January 27, 1989, the Trustee filed its amended complaint against CITIC, which includes a claim for fraud, for bid-rigging under 11 U.S.C. § 363(n), for breach of fiduciary duty (as a coconspirator), and for fraudulent transfer under 11 U.S.C. § 544(b). The first, third and fourth claims seek compensatory and punitive damages. The second, for bid-rigging, seeks damages or, in the alternative, avoidance of the sale and return of the assets of Intermagnetics or their value.

On June 2, 1989, CITIC filed a motion to dismiss based on the res judicata effect of the bankruptcy court's 1985 sale order. After a hearing, the district court dismissed the Trustee's complaint on res judicata grounds, characterizing its decision as a summary judgment. The Trustee filed a motion for reconsideration and stay of entry of judgment, which the district court denied. The litigation in bankruptcy court against Anand, Karbassi and 3D Media has been stayed pending the Trustee's appeal from the district court's order of dismissal and denial of reconsideration.

## DISCUSSION

■ This Court reviews *de novo* a grant of summary judgment, viewing the evidence in the light most favorable to the party against whom it is granted. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir.1984). Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled

to a judgment as a matter of law." Fed.R. Civ.P. 56(c). For the reasons set forth below, this Court finds that the judgment of the district court must be reversed.

I.

■ The Trustee argues that the bankruptcy court's 1985 order approving the sale of Intermagnetics to 3D Media "subject to" Anand's representations, which are now assumed to be false, means that the bankruptcy court's approval is now rescinded and the doctrine of res judicata should not bar the Trustee's action against CITIC.

The district court rejected the Trustee's argument and held that the "subject to" language in the bankruptcy court's 1985 order meant only that the declaration of Anand was a basis for the approval and authorization, but its truth was not a condition to the approval. This Court must reject the district court's interpretation of the bankruptcy court's 1985 order.

The bankruptcy court's order of December 11, 1985, uses the phrase "subject to" in a variety of places within the order and in a context which strongly indicates that the order of approval was conditioned on the veracity of Anand's declaration. The bankruptcy court authorized the sale of Intermagnetics "subject to the terms of this Order." The approval and authorization was further "subject to the letter of credit ... being amended to be drawn on the obligation of 3D Media, Inc., and not 3D Video Media, Inc." The approval and authorization was also made "subject to the following conditions, representations and warranties by Debtors," including not selling the books of the debtors and providing notice to the creditors when certain acts were done. The foregoing constituted factors upon which the bankruptcy court's approval of the sale of Intermagnetics was conditioned, and not mere bases for the decision. *See In re CADA Invs., Inc.*, 664 F.2d 1158, 1160 (9th Cir.1981).

The fact that the bankruptcy court which issued the 1985 order approving the sale of Intermagnetics to 3D Media also granted the Trustee's request for a preliminary in-

junction on June 7, 1988, based on findings that the Trustee's suit to rescind the sale of Intermagnetics to 3D Media was likely to succeed on the merits, further evidences the intention of the bankruptcy court to make the approval of the sale of Intermagnetics in 1985 conditional upon the truth of Anand's declaration.

This Court recognizes the district court's concern regarding the lack of finality of the bankruptcy court's 1985 order approving the sale if it is deemed to be conditioned upon the veracity of Anand's declaration. However, the bankruptcy court was empowered to and, this Court is satisfied, did condition the approval and authorization of the sale of Intermagnetics to 3D Media on the veracity of the representations made in the Anand declaration. *See CADA*, 664 F.2d at 1160–62; *Safe Flight Instrument Corp. v. United Control Corp.*, 576 F.2d 1340, 1343–44 (9th Cir. 1978) (per curiam). *See also* 11 U.S.C. § 363(e). Indeed, the failure of the district court to give the intended effect to the bankruptcy court's order of December 11, 1985, may itself be seen as violating the principles of res judicata.

## II.

The district court also rejected the Trustee's argument that the bankruptcy court's order of December 11, 1985 should be set aside pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, because the admittedly false declaration of Anand constituted a fraud upon the court.

█ Rule 60(b) does not limit the power of a court to entertain an independent action to set aside a judgment for fraud upon the court. This Court recently approved the following definition of fraud upon the court proposed by Professor Moore:

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.33, at 515 (2d ed. 1978) [hereinafter Moore], *quoted in Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir.1989). Thus fraud upon the court includes both attempts to subvert the integrity of the court and fraud by an officer of the court.

█ The district court did not actually decide whether Anand was an officer of the court, although it did state that he should be regarded more as a witness accused of perjury. Instead the district court determined that an independent action for fraud upon the court required the presence of "extrinsic fraud". Extrinsic fraud occurs "where a party is prevented by trick, artifice or other fraudulent conduct from fairly presenting his claim or defenses or introducing relevant and material evidence." 7 J. Moore, *supra* p. 8, ¶ 60.37[1], at 60–374 to –375. Perjury, on the other hand, is characterized as intrinsic fraud. The district court found that no extrinsic fraud occurred before the bankruptcy court.

The distinction between extrinsic and intrinsic fraud has been criticized by commentators, 7 J. Moore, *supra* p. 8, ¶ 60.37[1], at 60–377 to –380; 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2868, at 240–41 (1973), and the distinction generally does not apply to fraud upon the court, but only to fraud by the parties. 7 J. Moore, *supra* p. 8, ¶ 60.37[1], at 60–380, ¶ 60.33, at 60–356 to –357.

In *Hazel–Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds, Standard Oil of Cal. v. United States*, 429 U.S. 17, 18, 97 S.Ct. 31, 31, 50 L.Ed.2d 21 (1976) (district courts may consider Rule 60(b) motions without leave of appellate courts for cases already reviewed on appeal), the Supreme Court granted relief though the complainant had waited nine years to bring the action and had learned about the possibility of fraud during the first proceeding. The fraud in *Hazel–Atlas Glass* involved the introduction of fraudulent evidence, and the court did not find it necessary to distinguish between extrinsic and intrinsic fraud in setting aside the judgment. There the Supreme Court

explained that the inquiry as to whether a judgment should be set aside for fraud upon the court under Rule 60(b) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process:

> [T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Id.* at 246, 64 S.Ct. at 1001; *See also Alexander v. Robertson,* 882 F.2d at 424 (9th Cir.1989).

■ The reluctance of the district court to consider the Trustee's efforts to set aside the approved sale of Intermagnetics' assets reflects a recognition of the policy to promote the finality of judicial sales. The record before the district court, however, did not warrant the application of the policy of finality in this case.

> The policy of finality is not, however, absolute: in limited circumstances the courts have set aside confirmed sales. Courts have generally appeared willing to set aside confirmed sales that were " 'tinged with fraud, error or similar defects which would in equity affect the validity of any private transaction.' "

*In re CADA Invs., Inc.,* 664 F.2d at 1162 (9th Cir.1981) (citations omitted). The Court in *CADA* went on to say, "[A]lthough the policy of finality normally protects confirmed sales from orders to set aside, sales are properly set aside when compelling equities outweigh the interests in finality." *Id.*

■ The district court also erred in concluding that it was unnecessary to determine whether Anand was an officer of the court at the time he made the admittedly false declaration before the bankruptcy court. Officers of a debtor-in-possession are officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties. *See In re Tri–Cran, Inc.,* 98 B.R. 609, 617 (Bankr.D.Mass.1989) (setting aside bankruptcy sale for fraud involving debtor-in-possession); *In re Tudor Assocs., Ltd., II,* 64 B.R. 656, 662 (E.D. N.C.1986). *See also In re Sal Caruso Cheese, Inc.,* 107 B.R. 808, 816–17 (Bankr. N.D.N.Y.1989) (noting fiduciary duties owed by debtor-in-possession to the estate, the creditors, and the court).

■ Contrary to the argument made by CITIC, the fact that Anand was acting outside his authority when he committed fraud cannot mean that he therefore ceased being an officer of the court. Such a rule would operate to shield fraudulent activity by an officer of the court by virtue of the fraudulent activity itself. Further, although the creditors challenged the veracity of Anand's declaration at the bankruptcy court hearing in November 1985, he continued to owe duties to them and the estate as a whole until a trustee was subsequently appointed.

### III.

■ Finally, in granting summary judgment against the Trustee, the district court failed to address the Trustee's bid-rigging claim under 11 U.S.C. § 363(n). That statute expressly authorizes a bankruptcy trustee to "avoid a sale [under 11 U.S.C. § 363] if the sale price was controlled by an agreement among potential bidders" or to recover damages and attorneys fees from the participants in the scheme. Section 363(n) provides a statutory exception to the finality of bankruptcy sale orders for res judicata purposes. A contrary finding would render meaningless the ability of a bankruptcy trustee to "avoid a sale" under § 363(n). Such a result would also be inconsistent with the exception to the finality

of otherwise final orders provided by Fed. R.Civ.P. 60(b), and the holding of this court in *In re CADA Invs., Inc.*, 664 F.2d at 1162.

## CONCLUSION

The district court erred in determining that the bankruptcy court's December 11, 1985 order mandated dismissal of the Trustee's complaint on res judicata grounds. The bankruptcy court's order was conditioned on the veracity of the declaration of Armarjit Singh Anand. Anand was an officer of the court at the time he made the admittedly false declaration and under the circumstances the Trustee should be permitted to maintain its independent action to set aside the bankruptcy court's order for fraud upon the court in accordance with Rule 60(b) of the Federal Rules of Civil Procedure. Finally, the district court erred in failing to address the Trustee's bid-rigging claims under 11 U.S.C. § 363(n). We therefore vacate the district court's summary judgment and remand the case to the district court for further proceedings consistent with this Opinion.

REVERSED and REMANDED.