**Susan R. PUMPHREY,**
**Plaintiff–Appellee,**

v.

**K.W. THOMPSON TOOL CO., a New Hampshire Corporation d/b/a Thompson Center Arms, Defendant–Appellant.**

**Nos. 94–35281, 94–35282.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1995.

Decided Aug. 1, 1995.

R.B. Kading, Jr., Warren E. Jones, Neil D. McFeeley, Eberle, Berlin, Kading, Turndow & McKlveen, Boise, ID, for defendant-appellant K.W. Thompson Tool Co.

Jeffrey A. Strother, Lojek, Gabbert & Strother, and W. Anthony Park, Park, Red-

**1130**

ford, Thomas & Burkett, Boise, ID, for plaintiff-appellee Susan R. Sparks Pumphrey.

Before: SKOPIL, FERGUSON, and THOMPSON, Circuit Judges.

SKOPIL, Senior Circuit Judge:

We review in this appeal a district court's decision to set aside a verdict in favor of a defendant in a wrongful death action after the court discovered that defendant's in-house counsel participated in a scheme to defraud the court. The court ordered a new trial over defendant's objection that its conduct did not rise to the level of fraud upon the court, and even assuming that it did, that a new trial should be limited solely to the issue of liability. We agree with the district court that defendant's actions constituted fraud on the court, and that a new trial on all issues is appropriate. Accordingly, we affirm.

## I.

Melvin Sparks was killed when he dropped a Thompson P.C. Contender handgun and it fired, sending a bullet through his heart. Sparks' widow and children ("Sparks") brought a wrongful death action against the gun manufacturer, K.W. Thompson Tool Company ("Thompson"), alleging that the gun's internal and external safety devices were engaged at the time of the accident, but that the gun nevertheless fired when dropped.

At trial, Thompson introduced a videotape ("trial video") showing the Contender dropped from various heights and angles. The trial video shows that during the tests, the safeties performed as designed, and the gun never fired. Thompson's production manager, Kendrick French, conducted the tests. Also present were Thompson's vice president and general counsel, Edward Bartlett, and Thompson's president, Robert Gustafson. The jury found that plaintiffs suffered $100,000 in damages, but that the decedent was 80% contributorily negligent.

The present action arises as a result of a subsequent, unrelated lawsuit in which another plaintiff claimed injuries resulting from a dropped Thompson Contender. In this lawsuit, a second video ("original video") was produced during discovery, showing that the Contender fired when dropped during testing. This video was prepared by Thompson on the same day as the trial video, but was never produced during the *Sparks* litigation. A magistrate judge conducting a settlement conference in the later lawsuit learned that the original video was never produced in *Sparks*, and that Thompson's expert witness, Kendrick French, testified several times in *Sparks* that he had conducted drop-tests of the Contender but it had never fired. The magistrate judge reported these facts to the federal District Court in Idaho; Sparks' attorney was thereafter informed.

Sparks filed this independent action pursuant to Federal Rule of Civil Procedure 60(b), seeking to set aside the *Sparks* verdict. The district court granted summary judgment in favor of Sparks on the ground that Bartlett was an officer of the court and had committed fraud upon the court. The district court further held that even if Bartlett was not an officer of the court, the conduct was sufficient to constitute fraud upon the court. The district court set aside the verdict, ordered a new trial, and awarded attorney's fees.

## II.

Federal Rule of Civil Procedure 60(b) provides that a judgment may be set aside for fraud upon the court. One species of fraud upon the court occurs when an "officer of the court" perpetrates fraud affecting the ability of the court or jury to impartially judge a case. *See In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir. 1991); *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir.1989). Thompson first contends that Bartlett was not an "officer of the court" for purposes of the *Sparks* litigation.

Commencing in April, 1982, Edward Bartlett was general counsel and vice president of Thompson. He was not admitted to practice in the District of Idaho, where the *Sparks* trial occurred. He did not enter an appearance in *Sparks*, was not admitted *pro hac*

*vice,* and did not sign any documents filed with the court. Rather, Thompson was represented at trial by local counsel from Idaho.

We note, however, that Bartlett participated significantly in *Sparks* by attending the trial on Thompson's behalf, gathering information to respond to discovery requests and framing the answers, and participating in the videotaping of both the trial video and the original video. Additionally, Bartlett retained possession of both the trial video and original video after they were made. No one at Thompson differentiated between Bartlett's activities as vice president and his activities as general counsel.

We agree with the district court that Bartlett's participation in *Sparks* was sufficient to render him an officer of the court. *Cf. NCK Organization, Ltd. v. Bregman,* 542 F.2d 128, 133 (2d Cir.1976) (house counsel, who was also vice president and director, may not avoid disqualification from a matter "at least where circumstances indicate that [his] participation consisted of more than action simply in an officer's capacity"); *E.F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 381 (S.D.Tex. 1969) (law firm was disqualified from matter due to level of participation in case, notwithstanding firm's failure to enter an appearance). Thompson offers no sound reason why an attorney's participation in a case should not render him an officer of the court. The authority offered by Thompson in support of its position stands only for the propositions that attorneys have a duty to the courts before which they practice, and that courts have the corresponding authority to discipline attorneys who practice before them. *See e.g., In re Snyder,* 472 U.S. 634, 643, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985) (courts have inherent authority to discipline lawyers which "derives from lawyer's role as an officer of the court which granted admission"); *Cord v. Smith,* 338 F.2d 516, 524 (9th Cir.1964) (ethical rules of a federal court apply to attorney appearing before a

federal court even if state rules differ). Therefore, we conclude that Bartlett was an officer of the court in the *Sparks* litigation.

▮ Thompson next contends that Bartlett's actions do not constitute fraud upon the court.[1] We disagree. "[F]raud upon the court includes both attempts to subvert the integrity of the court and fraud by an officer of the court." *Intermagnetics,* 926 F.2d at 916. Furthermore, it "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Abatti v. Commissioner,* 859 F.2d 115, 118 (9th Cir.1988) (internal quotation omitted). Based upon the following undisputed facts, we agree with the district court's conclusion that Thompson, through Bartlett, perpetrated fraud upon the court.

Thompson made two videotapes approximately two months before trial. During the filming of the "original" video, while the Contender's internal safety was being tested, the gun fired after it was dropped. During the filming of the "trial" video, while the internal safety was being tested, the gun did not fire when dropped. The trial video was made because the test shown on the original video did not turn out as planned. French and Bartlett were present at the filming of these videos. Bartlett had possession of these videos after they were made, yet he never disclosed the existence of the original video to trial counsel for Thompson.

Prior to filming the videos, Thompson answered a request for production by stating that "defendant is not presently aware of any records relating to the testing of the Thompson Contender handguns. If records are later discovered, they will be made available pursuant to this request." Contrary to that statement, however, the original video was never disclosed to Sparks at any time, despite the fact that Bartlett participated in filming the video, had possession of the video, and drafted later discovery responses.

1. Thompson argues that the district court erred by granting summary judgment on the issue of fraud upon the court, as Sparks did not specifically move for summary judgment on this ground. Thompson, however, raised the issue of fraud upon the court in its own motion for summary judgment, and fully aired its position on

the issue. Moreover, Thompson fails to indicate a single argument or piece of evidence that it did not have the opportunity to present. Accordingly, the district court did not err by considering summary judgment on this issue. *See United States v. Grayson,* 879 F.2d 620, 625 (9th Cir. 1989).

Barely one month after the drop-tests were conducted, Bartlett drafted an answer to Sparks' interrogatories which mischaracterized the drop-tests. The answer admitted that during one test the Contender fired when dropped, but misstated that the drop was from five feet rather than three feet. The answer further misstated that both safeties were intentionally disengaged, when in fact the internal safety was *unintentionally* disengaged. The answer also misstated that there was no record of the test.

Bartlett attended the trial at which French testified several times, without qualification, that he had never seen the Contender fire when dropped during tests. Additionally, French was deposed in two cases subsequent to *Sparks* involving the same gun. Bartlett was present at both depositions. In one case, French stated that he had never been able to engage the internal safety, disengage the external safety, and then drop the gun and have it fire. In another case, French stated that he had been able to jar the safety out of place when dropping the gun but had not been able to make it fire.

These undisputed facts reveal that Thompson, through Bartlett, engaged in a scheme to defraud the jury, the court, and Sparks, through the use of misleading, inaccurate, and incomplete responses to discovery requests, the presentation of fraudulent evidence, and the failure to correct the false impression created by French's testimony. The end result of the scheme was to undermine the judicial process, which amounts to fraud upon the court. *Cf. Hazel–Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 245–46, 250, 64 S.Ct. 997, 1001, 1003, 88 L.Ed. 1250 (1944) (deliberately planned scheme to present fraudulent evidence constitutes fraud upon the court), *overruled on other grounds, Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976); *Abatti*, 859 F.2d at 118 (fraud upon the court involves unconscionable plan or scheme to improperly influence the court).

Thompson argues, however, that there was no fraud upon the court because Bartlett believed the original video was taped over, and in 1982, no one at Thompson thought that a videotape was a "document" or "record." Even taking the above as true, we nonetheless conclude that there is ample evidence of fraud upon the court. Bartlett said nothing when trial counsel argued that the trial video should be admitted, because the test was not "staged or rigged or anything else." French added to the deception at trial when he engaged in the following colloquy regarding the making of the trial video:

"Q. Was there any attempt to alter or modify that video tape or edit it?

A. No, sir, there was not.

Q. Does the video tape fairly and accurately portray the tests you did with the dropping of the gun?

A. Yes, it does."

Bartlett, who knew that French's answers were false because he was present at the taping, failed to take action regarding French's false answers at trial and in subsequent depositions. Additionally, Bartlett provided a misleading answer to the interrogatory regarding the drop-test.

Thompson further contends that regardless of whether the videotape was knowingly withheld, there was no fraud upon the court because the original video was not material to the issues in *Sparks* because it revealed only what Thompson's experts conceded at trial; namely, that the internal safety could disengage if the gun was dropped, and that the gun could fire if dropped with both safeties off. We reject this argument for two reasons. First, it is not as clear as Thompson suggests that the video is immaterial. Thompson appears to argue that the original video shows the gun firing after the internal safety was unintentionally disengaged during a prior drop. Review of the transcript, however, reveals that it is equally plausible that the safety disengaged and the gun fired on the same drop. This is, of course, why it should not have been concealed from the plaintiff or the jury.

Second, Thompson's argument misses the point. The issue here is not whether Sparks would have prevailed had the original video been produced. As we noted in *Intermagnetics*, "the inquiry as to whether a judgment

should be set aside for fraud upon the court under Rule 60(b) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process." *Intermagnetics,* 926 F.2d at 917 (citing *Hazel–Atlas,* 322 U.S. at 264, 64 S.Ct. at 1010). By failing to disclose the original video, mischaracterizing the results of the drop-tests, and failing to correct the false impression created by French's testimony, Bartlett undermined the judicial process. As the district court noted, Bartlett, as a licensed attorney, "is aware of the necessity for compliance with the rules of discovery and the rules of professional responsibility. He is aware of the damage failure to abide by these rules can wreck in the specific case at hand and the larger framework of confidence in the adversary trial system." Moreover, Thompson is in no position to dispute the effectiveness of the scheme in helping to obtain a favorable jury verdict. *See Hazel–Atlas* at 246–47, 64 S.Ct. at 1001–02 (holding that party who presented fraudulent evidence cannot disclaim its effectiveness after the fact).

Thompson further argues that the interrogatory answers regarding the drop-test contained only immaterial and technical inaccuracies, and thus, are insufficient to support a finding of fraud. We disagree. The issue in *Sparks* was whether the Contender could fire when dropped with one or both safeties engaged. Thus, contrary to Thompson's assertion, whether the internal safety was intentionally or unintentionally disengaged, and whether there was any record of the test, likely affected Sparks' pursuit of discovery.

 Nor do we agree with Thompson that Sparks' failure to uncover the alleged fraud, after receiving Thompson's interrogatory answers admitting that the gun fired during a drop test, should bar this action. Thompson's conduct during discovery assured that Sparks would have no reason to pursue discovery regarding the drop-tests. We note that Thompson failed to update the request for production, and also filed a misleading interrogatory answer regarding its drop-tests. We further note that Thompson

did not reveal the fact that the gun fired during a drop-test until less than a month before trial. In addition, Thompson successfully pursued a protective order precluding the deposition of Bartlett and others at Thompson after the drop-test occurred, but before the results were revealed to Sparks. This order made. it clear that the only remaining discovery was to be Thompson's answers to Sparks' interrogatories.

Moreover, even assuming that Sparks was not diligent in uncovering the fraud, the district court was still empowered to set aside the verdict, as the court itself was a victim of the fraud. In *Hazel–Atlas* the Supreme Court reasoned that:

> even if Hazel did not exercise the highest degree of diligence [the] fraud cannot be condoned for that reason alone. This matter does not concern only private parties. . . . [and] tampering with the administration of justice in the manner indisputably shown here involves far more than injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of the litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Hazel–Atlas,* 322 U.S. at 246, 64 S.Ct. at 1001. Accordingly, Sparks' failure to uncover the fraud during *Sparks* does not bar this action.

## III.

 Thompson argues that a new trial should be limited to the issue of liability, because any fraud that occurred did not relate to the issue of damages. We disagree. Partial trials "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from others that a trial of it alone may be had without injustice." *Gasoline Products Co., Inc. v. Champlin Refining Co.,* 283 U.S. 494,

500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). Sparks should be given the opportunity to present a complete case, unhampered by Thompson's fraud. The district court did not abuse its discretion by ordering a new trial on all issues. *See d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 897 (9th Cir.1977) (whether to limit issues in new trial is within trial court's discretion).

## IV.

Sparks seeks attorney's fees on appeal pursuant to our inherent power to levy sanctions for abusive litigation practices. *See Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir.1993). Our inherent powers includes the power to assess attorney's fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (internal quotations omitted). Although Thompson did not prevail on appeal, we do not conclude that its arguments were presented in bad faith, vexatiously, wantonly, or for oppressive reasons. Therefore, we decline to award attorney's fees on appeal.

**AFFIRMED.**