91 F.3d 154
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The PAYMASTER CORPORATION, an Illinois corporation,
Plaintiff-Appellant,
v.
AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida
corporation, Defendant-Appellee.
 No. 94-56779.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 9, 1996.
Decided July 2, 1996.
As Corrected Aug. 1, 1996.
 
 1
 Before: GOODWIN and HAWKINS, Circuit Judges, and MARQUEZ, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Paymaster appeals a summary judgment in favor of American Bankers Insurance Company, ABIC, effectively rejecting Paymaster's attempt under Fed.R.Civ.P. 60(b) to collect part of a judgment. Paymaster challenges as a fraud upon the court a final judgment in this now sixteen year old litigation before two district judges and two panels of this court.
 
 I. Procedural History (Chapter One)
 
 4
 In 1980, United Commercial Insurance Service and three individual defendants (the Raydens) sued Paymaster, and Paymaster counterclaimed, joining American Bankers Insurance Company (ABIC) as a counterclaim defendant. The litigation resulted in a judgment in excess of $11 million in favor of Paymaster for compensatory and punitive damages. While that judgment was on appeal, settlement negotiations proceeded.
 
 
 5
 Paymaster settled with all defendants, except ABIC, for $1.7 million which an earlier panel of this court characterized as compensatory damages. See United Commercial Ins. Serv. v. Paymaster Corp., 962 F.2d 853 (9th Cir.), cert. denied, Paymaster Corp. v. American Bankers Ins. Co., 506 U.S. 1022 (1992). Because all defendants were cross-claiming against each other for indemnity, United and the Raydens conditioned their participation in the $1.7 million settlement with Paymaster on their receiving a full release from ABIC of its cross claims for indemnity against them.
 
 
 6
 ABIC refused to grant the releases demanded by United and the Raydens until Paymaster executed a partial satisfaction of judgment in favor of ABIC, together with a written agreement providing that ABIC's liability for punitive damages of $2.4 million would be reduced by $1.7 million. Such an agreement arguably would have left ABIC liable to Paymaster for $700,000 in punitive damages, as well as whatever compensatory damages remained unsettled or unsatisfied after all other settlements or collections were concluded. Unfortunately, the apportionment of settlement funds to different types and amounts of damages was not made clear in all of the settlement documents.
 
 
 7
 The Raydens were to pay $500,000 toward the Paymaster judgment, and United $1.2 million. Paymaster and ABIC soon began to dispute the amount remaining due Paymaster on its judgment. ABIC insisted that it was entitled to one credit of $1.7 million on its compensatory damages liability as a matter of California law, and a duplicate credit of $1.7 million as the fruits of its independent settlement and mutual release agreement given to United and the Raydens to induce them to pay the settlement sums worked out with Paymaster.
 
 
 8
 The general rule in collecting California joint and several liability judgments is that a settlement with one defendant reduces the liability of all other defendants by an equal amount. Paymaster, 962 F.2d at 856 (citing California cases). ABIC thus asserted that it was entitled to two $1.7 million credits; one on its share of compensatory damages, and the other on its remaining liability for punitive damages (which, under California law, its insurers may or may not have been obligated to pay; a matter on which we express no opinion, as the point was not addressed in the trial court).
 
 
 9
 ABIC contended that its settlement and mutual releases with and between ABIC, United, and the Raydens had been given in consideration for an additional $1.7 million reduction in the punitive damages ABIC owed to Paymaster, separate from the $1.7 million in the settlement agreement between Paymaster and United and the Raydens, for which ABIC was eager to claim credit.
 
 
 10
 According to ABIC, the two amounts are identical because there was no other measure of the value of the cross claims for indemnity released by ABIC against its codefendents. No documentation expressly supports ABIC's theory, and no other party to the settlement has made such an assertion.
 
 
 11
 ABIC filed a Motion for Partial Relief from Judgment under Rule 60(b)(5).[1] Judge Wilson for the district court agreed with ABIC:
 
 
 12
 [T]wo separate satisfactions occurred. The documents provide that the partial satisfaction of punitive damages provided to ABIC was premised upon independent consideration, separate and apart from payments received by Paymaster which under the agreements operate to reduce compensatory damages.
 
 
 13
 Paymaster, 1990 WL 362043, at * 7 (C.D.Cal. Aug. 9, 1990). Judge Wilson based his decision on two written agreements, the partial satisfaction, Paymaster's letter to ABIC about the settlement, and two declarations of counsel. As noted, Judge Wilson entered a judgment leaving Paymaster with only $1.7 million to show for its $11 million judgment, but giving ABIC in effect $3.4 million in reduced liability for compensatory and punitive damages. This judgment was appealed and affirmed by this Court in Paymaster, 962 F.2d at 858.
 
 II. Procedural History (Chapter Two)
 
 14
 Following the decision of this court affirming Judge Wilson's judgment in favor of ABIC, Paymaster asserts that it reviewed other files and found evidence that Judge Wilson's final judgment was procured by a fraud upon the court. Paymaster returned to the district court with its own Rule 60(b) motion, and the case was assigned by "the wheel" to Judge Marshall.
 
 
 15
 Judge Marshall held a status conference and in due course called the case for hearing on ABIC's motion for summary judgment. Rule 60(b) allows the district court to set aside a judgment for fraud upon the court.[2] "Fraud upon the court as a basis for equitable relief is construed narrowly in order to preserve the finality of judgments, an important social and legal interest." Luttrell v. United States, 644 F.2d 1274, 1276 (9th Cir.1980) (internal quotations and citations omitted).
 
 III. Fraud on the Court
 
 16
 An attorney's conduct can be construed as fraud on the court. In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, rehearing denied, 322 U.S. 772 (1944), the Supreme Court found fraud on the court where an attorney had an article published by a "neutral" expert, and then used the article to obtain a patent and a judgment for patent infringement. Such fraud on the court demanded "the interposition of equity to devitalize the ... judgment." Id. at 246, overruled on other grounds, Standard Oil Co. of Cal. v. United States, 429 U.S. 17 (1976).
 
 
 17
 A claim for fraud on the court must present extraordinary conduct. This Circuit has applied Professor Moore's definition of fraud on the court:
 
 
 18
 'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.
 
 
 19
 In re Intermagnetics America, Inc., 926 F.2d 912, 916 (9th Cir.1991) (Trustee should be permitted to maintain action to set aside bankruptcy court's order for fraud upon the court where officer of the court made false declaration concerning his financial interest in a bankruptcy proceeding); Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir.1989) (attorney who failed to notify court he was not authorized to practice did not commit fraud on the court).
 
 
 20
 The questions of fraud raised by Paymaster are: 1) Did two lawyers lie to Judge Wilson on a material question of fact, 2) did the judge rely on those lies, and 3) did such reliance produce a fraud upon the court?
 
 
 21
 Judge Marshall concluded that no material questions of fact remained before the court, and granted summary judgment. We can understand and sympathize with the reluctance of a busy district judge to undertake the massive task of untangling the procedures that had led to the Rule 60(b) motion.
 
 
 22
 On this record, however, summary judgment was not appropriate. Some trial judge must get the parties and their lawyers into court, gently knock some heads together, let the lawyers complete whatever discovery is necessary, and try any unresolved fact questions in the traditional manner. On its face, a nonfrivolous Rule 60(b) motion is pending and grounded on fraud on the court. If indeed evidence is brought forward tending to prove that one or more lawyers lied to a district court, that the court relied on the information thus delivered, and that the reliance produced a fraudulent judgment, and factual findings support the motion, the challenged judgment must be vacated. If no such evidence is produced, the suggestion of professional misconduct by one or more lawyers will be put to rest. In any event, it is apparent that material fact questions exist.
 
 
 23
 The summary judgment appealed from is vacated and the cause is remanded for further proceedings. No party is to recover costs on this appeal.
 
 
 
 *
 Honorable Alfredo Marquez, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Rule 60(b)(5) provides, "the court may relieve a party ... from a final judgment ... [if] the judgment has been satisfied, released, or discharged ..."
 
 
 [2]
 "This rule does not limit the power of the court to ... set aside a judgment for fraud upon the court." Fed.R.Civ.P. 60(b)