**Lester Lorn BROWN, Plaintiff,**

v.

**CHILD SUPPORT ADVOCATES and Zandra L. Perkins, Defendants.**

Civ. No. 94–C–705B.

United States District Court, D. Utah, Central Division.

Nov. 30, 1994.

---

Jill L. Dunyon–Hansen and Jesse C. Trentadue, Salt Lake City, UT, for plaintiff.

Wendy M. Lewis and Jerome H. Mooney, Salt Lake City, UT, for defendants.

## OPINION AND ORDER

BENSON, District Judge.

### I.  Introduction

This case came on for hearing November 3, 1994, on defendant's motion to dismiss. The Court granted defendant's motion in part, issuing its ruling from the bench. At the urging of counsel for both sides, the Court hereby enters the following written opinion, setting forth the Court's ruling and reasoning therefor.

### II.  Background

Plaintiff Lester Lorn Brown has sued defendant Child Support Advocates ("CSA"), a d/b/a of defendant Zandra L. Perkins, claiming CSA harassed him for unpaid child support in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692o. He adds several diversity jurisdiction state law claims as well.

CSA moved to dismiss, arguing that child support is not a "debt" under the statute and that this court therefore lacks jurisdiction to hear the case. CSA also argues plaintiff's diversity jurisdiction basis is defective because his verified complaint only alleges "res-

idency" of the parties, not citizenship or domicile.

### III.  Factual Statement [1]

Plaintiff was divorced in October 1983. He is the father of two children. At the time of the divorce, plaintiff was ordered to pay $250.00 per month child support. In December 1984, plaintiff and his former wife stipulated that he owed back child support of $1,875.00, and that future support obligations would be increased to $300.00 per month. A judgment was entered reflecting that stipulation. Plaintiff's child support payments since that time have been minimal at best.

In 1993, plaintiff's ex-wife contacted defendant CSA for assistance in collecting outstanding child support. In March 1994, CSA mailed a letter to plaintiff, formatted to give the appearance of a court document, informing plaintiff that CSA would be pursuing the matter. Plaintiff thereafter contacted his attorney, who advised CSA by letter that all future correspondence regarding the matter should be sent to his office.

In April 1994, CSA mailed "Wanted" posters to some of plaintiff's neighbors, calling plaintiff a "Dead Beat Parent," stating he owed more than $30,000 in unpaid child support, and claiming he "has plenty of money to spend on himself but **has never paid one dime** of child support." In July 1994, CSA mailed a second "Wanted" poster directly to plaintiff, containing essentially the same information but including plaintiff's picture, and allegedly threatened to "mass mail" the poster to plaintiff's neighbors if he did not start paying his child support obligations. Plaintiff complains of additional, similar events, including numerous harassing telephone calls.

Plaintiff's verified complaint alleges CSA's actions violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692o. He seeks actual and statutory damages, as well as attorney's fees and costs.

Plaintiff's complaint also alleges state law causes of action for libel/defamation and in-

---

1. For purposes of this motion to dismiss, the Court assumes the veracity of the facts set forth in the verified complaint, as it must, and focuses on the legal issues raised by those facts. Other relevant facts are set forth in the parties' respective memoranda. The Court's recitation of facts does not constitute findings in the case; all relevant facts are subject to proof at trial.

tentional infliction of emotional distress, based on diversity jurisdiction. In his verified complaint, plaintiff alleges he is a "resident" of Washington state and CSA is a "resident" of Utah.

## IV. Arguments of the Parties

### A. Defendant's Position

Defendant argues that the Fair Debt Collection Practices Act does not apply to parties attempting to collect child support payments. Defendant submits the definition of "debt" under the Act is limited to obligations arising from consumer transactions, which did not form the basis of plaintiff's obligations. Defendant further argues that neither plaintiff's ex-wife nor his children meet the Act's definition of a creditor. Defendant concludes that because plaintiff's obligations do not come within the meaning of the Act, plaintiff's claims under the Act should be dismissed.

On the state law claims, defendant argues simply that plaintiff's allegations of "residency" are insufficient to establish diversity jurisdiction.

### B. Plaintiff's Position

Plaintiff argues in response that the purpose and scope of the Act are extremely broad and should be read to encompass debt collection practices of all varieties that violate those purposes. Plaintiff further submits that the language of the statute encompasses child support obligations. He points out that the term "consumer," for instance, is defined to mean "any natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3), a definition broad enough to include him. He argues that congressional intent in limiting the Act was to exclude commercial transactions, not to exclude obligations like his. Plaintiff also argues CSA meets the definition of "debt collector" under the Act.

Furthermore, plaintiff maintains that child support is a "debt" under the Act. The statutory definition speaks in terms of a "transaction," a broad term that includes negotiations and easily embraces contracts. Plaintiff points to the stipulation he entered into with his ex-wife in 1984 regarding child support arrearages and future payments, arguing the stipulation constitutes a transaction.

Plaintiff also recognizes the money that is the subject of the transaction must be primarily for "personal, family, or household purposes." 15 U.S.C. § 1692a(5). Plaintiff argues that nothing meets that requirement better than child support payments. He concludes that if defendant's abusive practices are allowed to go unpunished, the purposes of the Act will be frustrated.

On the diversity jurisdiction issue, plaintiff admits the complaint is deficient, argues that under Rule 8 the allegations put defendant on notice of the basis for jurisdiction, and asks the Court for leave to amend to assert diversity of citizenship, which plaintiff avers in fact exists.

## V. Discussion and Ruling

■ The federal statutory question is best resolved by resort to the language of the Fair Debt Collection Practices Act. The focus is whether the child support obligations constitute a "debt" under the Act. If they do, plaintiff correctly argues that the term "consumer" is broad enough to include him. See 15 U.S.C. § 1692a(3). Furthermore, the term "creditor" includes any person "to whom a debt is owed," id. § 1692a(4), a definition that would include plaintiff's ex-wife or children. Additionally, there is little doubt CSA would qualify as a "debt collector" under the Act given the allegations in this case. Id. § 1692a(6).

None of these questions are relevant, however, if the payments owed are not debts within the meaning of the statute. Under the Act,

[t]he term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

Id. § 1692a(5).

Plaintiff has submitted that the definition of "transaction" is extremely broad. The

Court assumes for purposes of this discussion that the definition is broad enough to include the 1984 stipulation and any other dealings involving plaintiff in which an obligation arose to pay child support.

The remaining question is whether "the money ... which [is] the subject of the transaction [is] primarily for personal, family, or household purposes." Plaintiff posits that it is, arguing that child support is used for those very purposes. However, plaintiff's argument misapprehends the statutory definition. The inquiry is not whether the alleged *creditor*—plaintiff's ex-wife or children in this case—would use the money for personal, family, or household purposes. The proper inquiry is whether the alleged *debtor* or "consumer"—plaintiff in this case—received "money, property, insurance, or services" from the transaction primarily for personal, family, or household purposes.

Plaintiff cannot point to any such item he received in connection with his stipulation or any other child support obligations he owed or owes. The purpose of plaintiff's stipulation, the corresponding judgment, and the subsequent monthly support obligations was to secure to the children ongoing support owed by an income-producing parent, not to secure to that parent additional monies to use for his own purposes.

■ Focusing on the debtor or consumer is the only way to give real effect to Congress's intent. If the focus were instead on how the creditor used the proceeds, a substantial number of transactions reasonably encompassed by the Act would fall outside the statute. An institutional creditor, for example, would rarely use debt payments for "personal, family, or household purposes"; yet loans by such a creditor to an individual for that individual's personal, family, or household needs would give rise to a debt that would easily fall within the purview of the Act. Plaintiff's construction would strain the common understanding of a consumer transaction, which Congress attempted to define, and produce an absurd result in most cases, including this one. Plaintiff has not presented an argument sufficient to merit such a conclusion.

In short, Congress simply did not include obligations like plaintiff's in its coverage under the Act. The Act was designed to remedy abusive collection practices specifically in the consumer context, despite the fact that those same practices might exist in other contexts. Congress enacted the legislation because "[e]xisting laws and procedures for redressing these injuries [were] inadequate to protect consumers," 15 U.S.C. § 1692(b), not to right all wrongs associated with collecting past due debts. If abusive collection practices exist in this or other contexts, remedy for such abuses lies elsewhere, for Congress has not addressed them in this Act. *Cf. Munk v. Federal Land Bank of Wichita,* 791 F.2d 130, 131–32 (10th Cir.1986) (Fair Debt Collection Practices Act did not apply to transaction involving a loan for *agricultural* purposes, despite allegations of harassment).

The only published court opinions classifying child support obligations under the Act have come to the same conclusion. In *Mabe v. G.C. Services Limited Partnership,* Civ. A. No. 93–0234–B, 1994 WL 6920, 1994 U.S.Dist. LEXIS 162 (W.D.Va., Jan. 6, 1994), the court held that child support payments are not "debts" within the meaning of the Act. The Fourth Circuit recently affirmed. *Mabe v. G.C. Services Limited Partnership,* 32 F.3d 86 (4th Cir.1994).

■ This Court holds likewise. Plaintiff's child support payments are not "debts" within the meaning of the Fair Debt Collection Practices Act. Plaintiff's claims under the Act must therefore be dismissed for lack of subject matter jurisdiction.

Plaintiff's errors in stating a basis for his state law claims are not so fatal, however. The deficiencies in the verified complaint are technical in nature, and plaintiff has affirmed that diversity of citizenship in fact exists. Plaintiff may amend his complaint to so allege.

## VI. Conclusion

In sum, defendant's motion to dismiss the federal statutory claims, counts one through three of the verified complaint, is GRANTED, as plaintiff's alleged child support obli-

gations are not "debts" within the meaning of the Fair Debt Collection Practices Act. The Act applies only to debts arising from consumer transactions, and plaintiff's debts in the instant case did not.

On the state law claims, plaintiff has averred that diversity of citizenship exists in this case. Accordingly, plaintiff is granted leave to amend his complaint to allege diversity of citizenship between the parties.

IT IS SO ORDERED.