**Donald and Loretta BITAH, Plaintiffs,**

v.

**GLOBAL COLLECTION SERVICES, INC., Tony Reed, and Michael C. Norton, Defendants.**

**No. CIV 95–736–BB/RLP.**

United States District Court,
D. New Mexico.

Feb. 12, 1997.

Richard N. Feferman, Albuquerque, NM, for Plaintiffs.

Michael C. Norton, San Ramon, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

BLACK, District Judge.

THIS MATTER is before the Court on Plaintiffs' *Motion for Partial Summary Judgment,* and *Defendant Norton's Counter Motion for Summary Judgment.* The Court having reviewed the briefs of counsel and the declarations and depositions submitted, finds Defendant's motion is well taken as to Plaintiff Loretta Bitah and it will be GRANTED as to this Plaintiff but otherwise DENIED, and the Court finds the motion of Plaintiff Donald Bitah is well taken and it will be GRANTED.

### Discussion

#### I.  Undisputed Facts

Plaintiff, Donald Bitah, entered into an Arizona transaction in 1990 in which he co-signed an automobile installment sale contract for a friend.[1]  The car was repossessed for nonpayment and resold in Arizona.

Defendant Michael C. Norton ("Norton") is an attorney licensed in California who was a full time employee of Defendant Global Collection Services, Inc. ("Global").  In 1989, Norton wrote between four and ten dunning, form letters for Global.  These were routine-ly sent on his attorney letterhead.  It is admitted that Norton is a "debt collector" as that term is defined in the Fair Debt Collection Practices Act ("the Act"), 15 U.S.C. 1692 (1988).[2]  Norton authorized Global collectors to send these dunning letters on his letterhead to any address in California without seeking Norton's approval.  Indeed, Norton admits Global collectors were authorized to send out computer generated letters on his letterhead to California addresses without Norton having to review the debtor's file. Norton did not receive copies of the letters nor did he receive lists showing that the letters had gone out under his name.  These letters were not signed because too many were sent to make it feasible for Norton to sign each one.  At all relevant times, Norton and Global shared the same address and telephone system and had a common receptionist.

In September of 1993, Bitah's automobile account was assigned to Global by the bank which held the installment contract.  Initially, Global sent a letter to the Arizona address on its own letterhead early in September of 1993.  In late September of 1993, at Global's request, Norton reviewed the Bitah file.  At that time, Norton authorized Global to send a letter to Bitah in Arizona on Norton's letterhead.  This letter advising that Global intended to sue Bitah was returned by the Postal Service.

More than one year after the Arizona letter, Global sent Bitah two more form letters on Norton's letterhead to a New Mexico address.  These particular dunning letters were known as "Notice number 10."  The collectors were the ones who decided when to mail a "Notice number 10" and Norton did not monitor how Global collectors were using his attorney letterhead.  Norton did not maintain a file on Bitah and did not see or read the letters that were sent to Bitah in New Mexico before they were sent.  He also had

---

1.  The friend is, however, not named and the contract actually seems to indicate Bitah is the buyer.

2.  "Debt collector" is defined in Section 1692a(6) as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another...."

no direct personal involvement in generating the letter.

Global has closed its offices without a forwarding address and defaulted in the present case.

## II. *Norton is Entitled to a Summary Judgment Against Loretta Bitah*

■ Norton initially argues that the Plaintiff, Loretta Bitah, should be denied summary judgment and that he should actually be granted summary judgment against her. Norton does not dispute that Loretta Bitah received calls from Global at work, but notes it was she that returned the calls and states that she has not shown she was impacted by any violation of the Act which was performed, or even sanctioned, by Norton.

For the purposes of prohibited communications, consumers are defined by the Act to include not only the actual debtors but their spouses, parents (minors), guardians, executors, and administrators. 15 U.S.C. § 1692c(d); *see also, West v. Costen*, 558 F.Supp. 564 (W.D.Va.1983) (consumer's mother a proper plaintiff under the Act). However, Loretta Bitah has brought forth no evidence that Norton, as distinguished from Global, ever had any communication with her. Discovery is closed and trial is scheduled in less than three weeks. Loretta Bitah has had adequate time to conduct discovery and has failed to develop sufficient evidence to bring forth a claim against Norton.

All Loretta Bitah's attorney offers is that "Plaintiffs still believe there may be a connection between the telephone collection activities of Global's collectors and attorney Norton," and Ms. Bitah's lawyer seeks "a continuance to permit discovery to be had." (Plaintiffs' Reply Brief, p. 9). "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.1995) (quoting Fed. R.Civ.P. 56(c)). Loretta Bitah has failed to show Norton had any role in the telephone calls she received from Global or that he participated in, or even sanctioned, any communication with her. It is, therefore, appropriate to grant Norton's cross motion for summary judgment against Loretta Bitah.

## III. *The Debt was Covered by the Act*

■ Norton next maintains that Donald Bitah has failed to bring forth evidence to establish a prima facie case under the Act. Initially, he argues that Bitah has not established the debt falls within the definition of 15 U.S.C. § 1692a(5). This subsection provides the Act applies to: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." The Tenth Circuit has read this to require the plaintiff to come forward with evidence the debt was intended to apply to a consumer transaction. *Munk v. Federal Land Bank of Wichita*, 791 F.2d 130 (10th Cir.1986) (loan to farmers by the Federal Land Bank not covered); *see also, Brown v. Child Support Advocates*, 878 F.Supp. 1451 (D.Utah 1994) (child support not consumer debt under the Act).[3]

Donald Bitah has, however, provided a copy of the installment contract which defines the debt. The contract has two boxes. One says "you intend to use the vehicle primarily for personal, family or household purposes." That box is checked by the par-

---

3. The federal courts generally seem to have excluded any debt which has an underlying commercial purpose, *see Bloom v. I.C. System, Inc.*, 972 F.2d 1067 (9th Cir.1992) (loan between friends to invest in commercial software venture not consumer debt); *National Union Fire Ins. Co. v. Hartel*, 741 F.Supp. 1139 (S.D.N.Y.1990) (promissory note for tax shelter partnership not consumer debt); *but see* Robert A. Monteith,

*Collecting Debt in Wyoming: The Fair Debt Collection Practices Act as a Trap for the Unwary*, 31 Land & Water L.Rev. 731, 737 (1996) (Monteith) ("Finally, although not a great number of cases address the precise meaning of 'personal, family or household,' the decisions liberally construe it."); *Dorsey v. Morgan*, 760 F.Supp. 509 (D.Md. 1991) (buyer of membership in recreational campground was a "consumer" under the Act).

ties. The separate box, for designating the transaction as a "commercial, industrial or agricultural use," is blank. Bitah has thus brought forth sufficient evidence the debt was for a consumer transaction. Norton does not counter with any evidence the transaction was for a commercial purpose.

If the movant carries his burden, "responsibility then devolves upon the non-movant to show the existence of a genuine issue as to material fact." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir.1993). Once the party moving for summary judgment has established a prima facie claim on which he would be entitled to relief, "it is not enough that the nonmovant's evidence be 'merely colorable' or anything short of 'significantly probative;' the nonmovant must come forward with specific facts showing a genuine issue for trial." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1361 (10th Cir.1993); *see also, John Hancock Mutual Life Ins. Co. v. Weisman,* 27 F.3d 500 (10th Cir.1994). Therefore, in light of Norton's failure to bring forth any evidence to support his argument the debt was for a commercial purpose, the Court must decide this issue in favor of Donald Bitah.

## IV. *Defendants Actions Violated the Act*

▪ Norton's next argument is presented under the rubric "Some of Plaintiffs' Allegations About the Letters are Not True." (De-

fendant Norton's Brief Opposing Plaintiffs' Motion for Partial Summary Judgment, p. 11). This section of Norton's brief is premised upon the argument that while Norton admittedly gave Global authorization to send his form letters on his stationery to California debtors, he did not provide such carte blanche for letters to debtors located in other jurisdictions.[4] This does not, however, explain why Norton expressly authorized a letter to Bitah in 1993 when it appeared Bitah lived in Arizona rather than New Mexico.

▪▪ Even if Norton only expressly authorized Global to use his letterhead to contact California debtors, however, there can be little doubt his actions subject him to liability under the Act. Initially, it is not at all clear that any of the form letters Norton prepared for Global's use provided the information required by the Act,[5] and the letters received by Bitah in 1995 certainly did not. Nor are Norton's protestations of lack of express authorization to send letters outside California persuasive in light of his allowing Global unlimited access to his letterhead and taking absolutely no steps to monitor how it was being used. Under the Act, attorneys are required to review the debtor's file and have some knowledge of the debt before permitting a demand letter to be sent over their name. *Martinez v. Albuquerque Collection Services, Inc.,* 867 F.Supp. 1495, 1500

4. Norton presumably presses this argument to avoid the impact of precedent recognizing it is a "misrepresentation" under the Act to threaten suit where the debt collector has no authority to bring a legal action. *See, e.g., Sluys v. Hand,* 831 F.Supp. 321 (S.D.N.Y.1993); *Gaetano v. Payco of Wis., Inc.,* 774 F.Supp. 1404, 1414 (D.Conn. 1990); *cf. Kuhn v. Account Control Technology, Inc.,* 865 F.Supp. 1443, 1451 (D.Nev.1994) (discussing problems under the Act for agencies attempting to collect outside of the forum).

5. A central provision of the Act requires the validation of the debts notice requirement. This requires the debt collector to send the following information, in writing, to the debtor in the initial communication, or at least within five days thereafter:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes

the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notified the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
*See,* Laurie A. Lucas, Alvin C. Harrell, *Understanding the FDCPA: A Comprehensive Analysis,* 49 Cons.Fin. L.Q. Rep. 301, 307 (1995). It is not clear what the original 1993 letter from Global to Donald Bitah said, but the Notice number 10 did not meet the requirements enumerated as (3), (4) or (5).

(D.N.M.1994); *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1461 (C.D.Cal.1991); *see further, Monteith,* 31 L.W.L.Rev. at 749. The Act has also been read to apply a stricter standard to an attorney than a lay debt collector. *Crossley v. Lieberman,* 868 F.2d 566, 572 (3d Cir.1989); *see also,* FTC Staff Commentary on the Act, 53 Fed.Reg. 50102 (Dec. 13, 1988). Indeed, the Act generally imposes strict liability. *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 323 (E.D.Mich.1992).[6]

█ Although not specifically referring to it, Norton seems to be relying on the "bona fide error" defense. The bona fide error defense can only be asserted if the debt collector can demonstrate the error occurred notwithstanding the maintenance of procedures designed to prevent such errors. *See,* Lucas & Harrell, 49 Cons.Fin. L.Q. Rep. At 309. Not only has Norton not demonstrated such firewall procedures, based on the current record his total lack of monitoring actually facilitated Global's sending letters to debtors beyond the boundaries of California.

The United States Court of Appeals for the Second Circuit recently recognized the attorney cannot escape liability by pointing the finger at the debt collection agency with which he has collaborated. In *Clomon v. Jackson,* 988 F.2d 1314 (2d Cir.1993), the general counsel of a collection agency occupied the same position that Norton played in the present case; i.e., he personally approved the form letters used by the debt collector;

he did not determine when particular letters should be sent; he had no personal involvement in the mailing of the particular letters; and he did not even know the identities of the persons to whom the letters were sent. The Circuit Court recognized the letters were false and misleading under the Act because they were not "from" the attorney in any meaningful sense of the word. *Id.* at 1320.

Similarly in *Avila v. Rubin,* 84 F.3d 222 (7th Cir.1996), attorney Rubin's law office sent form letters he had approved, on Rubin's letterhead, as mass-produced collection letters. Attorney Rubin had no direct personal involvement in the creation, preparation or mailing of the letters to the plaintiff. Rubin also did not review the debtor's file, determine when particular letters should be sent, see particular letters before they went out, or even know the identities of the debtors to whom the letters were sent. *Avila* at 228–29. All of this activity took place in Rubin's office but again the Court of Appeals found it to be in violation of the Act because it was without the meaningful professional input of the charged attorney.

█ The letters in this case imply Norton has been directly involved and professionally considered Global's claims against Bitah.[7] If the attorney threatens suit, he must have the intent and ability to follow through and file suit as threatened. *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2d Cir.

---

6. Aside from the Act, California, where Norton is licensed, has long prohibited an attorney from lending his name to a non attorney. (*McGregor v. State Bar of Cal.,* 24 Cal.2d 283, 148 P.2d 865 (1944); Cal. Stats. Bus. & Prof. Sec. 6105).

7. Since both letters are the same and relatively short, they are reproduced here for the convenience of the reader:

Dear DONALD BITAH:
Global Collection Services has asked me to write to you about your debt to BANK OF AMERICA of $21,732.56.
I will just say that Global Collection Services is concerned that you have not paid the $21,732.56 which you owe to BANK OF AMERICA nor have you made any satisfactory arrangement to pay it. Global Collection Services was ready to refer your account to me for legal action, but decided to give you a final opportunity to resolve this matter first.

If Global Collection Services does take legal action on your account, you will incur additional legal costs and/or attorney's fees, and you may have part of your wages seized to pay a judgment against you.
Unless you pay Global Collection Services within 5 business days from the date of this letter, Global Collection Services will instruct me to file suit against you. You should send payment to Global Collection Services before that time at:

Global Collection Services
Post Office Box 3118
Danville, Ca 94526

Very truly yours,
Michael C. Norton
MCN:kl
cc: Global Collection Services
This is an attempt to collect a debt. Any information obtained will be used for that purpose.

**624**

1993); *United States v. Central Adjustment Bureau, Inc.*, 667 F.Supp. 370, 378 (N.D.Tex. 1986). Since Norton permitted unlimited access to his stationery and allowed Global to send letters threatening suit without his knowledge, his defense that his permission was limited to California is inconsistent with the Arizona letter he authorized and without legal merit.

Based on the present record, summary judgment for Plaintiff Donald Bitah is thus appropriate. *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir.1994).

Now, therefore,

**IT IS ORDERED** that *Defendant Norton's Counter Motion for Summary Judgment* [# 35] is DENIED, and that Plaintiffs' *Motion for Partial Summary Judgment* [# 33] is GRANTED.